Robert A. Faucher (ISB #4745)
Christopher C. McCurdy (ISB #8552)
HOLLAND & HART LLP
800 West Main Street, Suite 1750
P.O. Box 2527
Boise, Idaho 83701-2527
Telephone: (208) 342-5000
Facsimile: (208) 343-8869
Email: rfaucher@hollandhart.com
ccmccurdy@hollandhart.com

Attorneys for BrunoBuilt, Inc.

# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| In re: | Case No. 19-01069-JMM |
| WILLIAM E. DEMPSEY, II and AMY D. DEMPSEY, | Chapter 11 |
| Debtors. | |

**BRUNOBUILT, INC.'S OBJECTION TO WASHINGTON TRUST BANK'S ADEQUATE PROTECTION STIPULATION**

NOW COMES BRUNOBUILT, INC. and represents as follows:

Introduction

1.   BrunoBuilt, Inc. ("BrunoBuilt") is the estate's largest creditor. It is unsecured.

2.   Washington Trust Bank ("Bank") asserts a second priority deed of trust against Debtors' Boise residence. Bank and Debtors have filed a stipulated motion, docket no. 110 (the "Motion") seeking approval of a stipulation authorizing Debtors to recommence, postpetition, their regular payments on the Bank's prepetition loan.

3.   BrunoBuilt objects to the Motion.

4.  The basis of the Motion is that Bank lacks adequate protection. However, there is no credible evidence this is so.

### Debtors Own a Residential Estate in Foothills East

5.  Debtors own a five-bedroom luxury house in the East Boise foothills. It has more than 5,000 square feet of total living space. The estate consists of five different tax parcels, composed of six different subdivision lots. Two tax parcels (three subdivision lots) are improved with the house, with a street address of 1720 E. Sendero Lane. Other parcels constitute the driveway and the large grounds. The five tax parcels (six lots) are collectively referred to in this Objection as the "Residential Estate." The Residential Estate is Debtors' largest asset.

6.  Debtors have testified under oath that they purchased the Residential Estate for $585,000 in August 2016, before the recent historic run-up in real estate prices in Boise. Debtors testified that they conducted $70,000 in renovations to their home after purchasing the Residential Estate.

### Almost Everything in the Motion Regarding the Residential Estate is Misleading or Incorrect

7.  Nearly everything Debtors disclose to the Court regarding the Residential Estate in the Motion is misleading or incorrect.

8.  Debtors do not disclose that Bank's security interest almost certainly covers the entire Residential Estate, not just the house. Bank's deed of trust is attached to Exhibit B of the Motion, and identifies all six subdivision lots.

9.  In identifying the supposed value of Bank's collateral, Debtors give the Court only the supposed value of the house. Of course, this is misleading. The house is only part of Bank's collateral. In Debtors' schedule of assets, Debtors attribute separate value to the other four tax parcels, but the Motion does not include that value. (Of course, if Bank is waiving the

BRUNOBUILT, INC.'S OBJECTION TO WASHINGTON TRUST BANK'S ADEQUATE
PROTECTION STIPULATION - 2

rest of its collateral, BrunoBuilt will happily respect the waiver. It is true that Bank's deed of trust identifies only one of the five tax parcels.).

10. While Debtors in their Motion contend that Bank is undersecured, or nearly undersecured, Debtors in their schedule of exempt assets claim their full $100,000 homestead exemption. Of course, these two contentions are inconsistent. If there is value to support Debtors' $100,000 homestead exemption, then obviously Bank has an equity cushion that constitutes adequate protection. This is especially clear given that the secured creditors' two mortgages accrue less than $70/day in post-petition interest.

<center>Debtors' Valuation is Not Credible</center>

11. In the Motion, Debtors suggest that Bank's collateral is worth $582,000. This valuation is not the least bit credible. It is much too low.

12. First, as noted above, Debtors misleadingly do not even attribute to Bank the value of all of its collateral.

13. Second, Debtors purchased their Residential Estate in August 2016 for $585,000 and put $70,000 into it. That provides a cost basis of $655,000, before the incredible run-up in real estate values in Boise in the last 42 months. The idea that Bank's collateral is worth $582,000 is absurd. Of course, in their effort to lowball the value of Bank's collateral in the Motion, Debtors disclose in the Motion neither the purchase price nor the cost of their house renovations. BrunoBuilt had to conduct examinations of Debtors under oath to obtain that information.

14. Anticipating that Debtors would lowball the value of their Residential Estate, BrunoBuilt had the Residential Estate appraised very recently. In the unlikely event that an

evidentiary hearing on the Motion proves necessary, BrunoBuilt will convincingly prove that Bank has a substantial equity cushion, which provides Bank adequate protection.

<u>Debtors Do Not Disclose that the First Priority Deed of Trust is Probably Avoidable</u>

15. The Motion makes passing reference to the first priority debt on the Residential Estate. That debt is held by Idaho Central Credit Union ("ICCU") and is in the approximate petition date amount of $482,000. It is the existence of ICCU's security interest that supposedly supports Debtors' contention that Bank may be undersecured.

16. There is no indication, however, that Debtors have made any analysis of ICCU's position during the six months this case has been pending.

17. BrunoBuilt, however, has conducted such an analysis. BrunoBuilt asserts that ICCU's security interest may well be without value. Of course, such a result would have substantial impact on this Court's evaluation of the Motion.

18. As noted above, the Residential Estate consists of many parcels.

19. ICCU recorded its deed of trust against only two of the six subdivision lots (one tax parcel). The deed of trust is included in ICCU's Claim No. 9 in the claim registry. Debtors' house alone spans three lots (two tax parcels), however. Accordingly, ICCU's deed of trust apparently does not even cover the entire house, much less the driveway or the grounds.

20. ICCU did eventually re-record its deed of trust, attaching to it a legal description encompassing all six subdivision lots (five tax parcels). However, Debtors did not sign the re-recorded deed of trust. ICCU apparently just stapled a different legal description to the existing deed of trust and recorded it again. Of course, the re-recorded deed of trust does not give ICCU a security interest in the four other subdivision lots. "The failure of a grantor to re-sign and re-acknowledge a deed that has been altered by the grantee renders that deed null and void on its

                    Document      Page 5 of 7

face." *Armstrong v. Berco Res., Ltd.*, 752 F.3d 716, 725 (8th Cir. 2014) (quoting *Johnson v. Hovland*, 795 N.W.2d 294, 301 (N.D. 2011)) (applying North Dakota law).[1]

21.     BrunoBuilt believes, then, that Debtors can bring litigation against ICCU to avoid and nullify ICCU's claimed security interest in, at the least, the four lots that are only described in the re-recorded deed of trust.

22.     If such a result came to pass, ICCU's collateral would consist, at most, of part of a house.  Those rooms would have no driveway or lawn.  Under section 506(a) then, ICCU's secured claim would likely be without any value.

23.     Obviously, the Motion cannot be granted until Debtors can appropriately address the status of ICCU's lien.

<u>Debtors' Adequate Protection Proposal Is Completely Inconsistent with the Interests of the Bankruptcy Estate</u>

24.     Debtors' and Bank's adequate protection proposal is that Debtors would resume their prepetition payment schedule.  Debtors assert this is advisable because Bank is (or will soon be) undersecured; Debtors wish to keep their Residential Estate; and Debtors intend to reaffirm their debt to Bank.

25.     The idea that Bank is undersecured is addressed at ¶¶ 8-23 above.

26.     The ideas that Debtors will keep their Residential Estate and reaffirm Bank's debt are antithetical to the interests of the bankruptcy estate for a host of reasons.

27.     First, while the idea that Debtors would remain in their luxury home is no doubt comforting to Debtors, it does nothing for their creditors.  BrunoBuilt believes a liquidation of the Residential Estate will produce somewhere in the range of $350,000-$735,000 in cash

---

[1] ICCU did not attach the re-recorded deed of trust to its proof of claim.

BRUNOBUILT, INC.'S OBJECTION TO WASHINGTON TRUST BANK'S ADEQUATE
PROTECTION STIPULATION - 5

proceeds to the estate after payment of secured debt.  The Residential Estate must be sold, and quickly.

28.  Second, even in the extremely unlikely event Debtors stay in their Residential Estate, they should cram Bank down over 30 years at today's record low interest rates, rather than retain a higher-rate loan with a near maturity.  Debtors' proposal makes no sense insofar as the estate as a whole is concerned.

29.  Third, even if Bank were entitled to adequate protection—which it isn't—a more appropriate adequate protection proposal would be for Debtors to agree to pay real property taxes and to pay Bank $46.22 per diem, which is the amount of the interest accruing on ICCU's claim.

## Conclusion

30.  The Motion has no merit whatsoever.

WHEREFORE, BrunoBuilt, Inc. prays that the Court deny the Motion seeking approval of the adequate protection stipulation between Debtors and Washington Trust Bank.

DATE this 9th day of March, 2020.

HOLLAND & HART LLP

By /s/ Robert A. Faucher
Robert A. Faucher, of the firm
Attorneys for BrunoBuilt, Inc.

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on this 9th day of March, 2020, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

| | |
|---|---|
| Holly Roark<br>ROARK LAW OFFICES<br>950 Bannock Street, Suite 1100<br>Boise, ID  83702<br>Telephone:  (208) 536-3638<br>*Attorneys for Debtors* | • holly@roarklawboise.com |
| Brett R. Cahoon<br>Office of the U.S. Trustee<br>720 Park Blvd., Suite 220<br>Boise, ID  83712<br>Telephone:  (208) 334-1300 | • ustp.region18.bs.ecf@usdoj.gov |
| Mark B. Perry<br>Trevor L. Hart<br>PERRY LAW, P.C.<br>P.O. Box 637<br>Boise, ID  83701-0637<br>Telephone:  (208) 338-1001<br>*Attorneys for Washington Trust Bank* | • mbp@perrylawpc.com<br>• tlh@perrylawpc.com |

      /s/ Robert A. Faucher
      Robert A. Faucher
      of HOLLAND & HART LLP

14260789_3

BRUNOBUILT, INC.'S OBJECTION TO WASHINGTON TRUST BANK'S ADEQUATE PROTECTION STIPULATION - 7