Holly Roark, ISB No. 7143
**ROARK LAW OFFICES**
950 Bannock St. Ste. 1100
Boise, ID 83702
Telephone: (208) 536-3638
Facsimile: (310) 553-2601
Email: holly@roarklawboise.com

*Counsel for Debtors-in-Possession*

UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO – BOISE

| | |
|---|---|
| In Re: | Case No. 19-01069-JMM |
| WILLIAM E. DEMPSEY, II, and AMY D. DEMPSEY, | Chapter 11 |
| Debtors and Debtors in Possession. | |

**DEBTORS-IN-POSSESSION'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF OBJECTION TO BRUNOBUILT, INC.'S MOTION FOR ORDER SHORTENING TIME TO RESPOND TO FIRST SETS OF WRITTEN DISCOVERY TO DEBTORS AND DCCC (DOCKET NO. 164)**

Pursuant to the Federal Rules of Evidence, Rule 201(b), William E. Dempsey, II and Amy D. Dempsey, the Debtors and Debtors-in-Possession ("DIP") herein, hereby request that the Court take judicial notice of the following:

**Exhibit A**:    A true and complete copy of the *Debtors-in-Possession's Memorandum in Support of Objection to BrunoBuilt, Inc.'s Motion to Extend Deadline to Object to Interim Fee Application*, filed with the court on June 8, 2020, as Docket No. 177 and served on counsel for BrunoBuilt, Inc. in the above referenced bankruptcy case.

**Exhibit B**:    A true and complete copy of the *Declaration of William E. Dempsey, II, in Support of Debtors' Objection to BrunoBuilt, Inc.'s Motion to Extend Deadline to Object to Interim Fee Application*, filed with the Court on June 8, 2020, as Docket No. 174 and served on counsel for BrunoBuilt, Inc. in the above referenced bankruptcy case.

DATE: June 8, 2020                                    ROARK LAW OFFICES

Holly Roark,
Counsel for Debtors-in-
possession

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that ON June 8, 2020, I filed the forgoing document electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Holly Roark on behalf of Debtors-in-Possession holly@roarklawboise.com, courtnotices@roarklawoffices.com

Robert A Faucher on behalf of Creditor BrunoBuilt, Inc.
rfaucher@hollandhart.com, boiseintaketeam@hollandhart.com;spturner@hollandhart.com

Philip John Griffin on behalf of Creditor BrunoBuilt, Inc.
PJGriffin@hollandhart.com, boiseintaketeam@hollandhart.com;njhammond@hollandhart.com

Jesse A.P. Baker on behalf of Creditor Bank of America
(NC)                          ecfidb@aldridgepite.com,
JPB@ecf.courtdrive.com

Lesley Bohleber on behalf of Creditor Bank of America,
N.A.                          ecfidb@aldridgepite.com,
llueke@ecf.courtdrive.com

Trevor L Hart on behalf of Creditor Washington Trust Bank
tlh@perrylawpc.com, jks@perrylawpc.com;mbp@perrylawpc.com;taw@perrylawpc.com

Scott B Muir on behalf of Interested Party CITY OF BOISE
BoiseCityAttorney@cityofboise.org

Brett R Cahoon on behalf of U.S. Trustee US
Trustee ustp.region18.bs.ecf@usdoj.gov

AND I FURTHER CERTIFY that on such date I served the foregoing on the following non CM/ECF Registered Participants in the manner indicated:

Via first class mail, postage prepaid addressed as follows:

N/A

/s/ *Holly Roark*

_____
Holly Roark

EXHIBIT A

Holly Roark, ISB No. 7143
**ROARK LAW OFFICES**
950 Bannock St. Ste. 1100
Boise, ID 83702
Telephone: (208) 536-3638
Facsimile: (310) 553-2601
Email: holly@roarklawboise.com

*Counsel for Debtors-in-possession*

UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO – BOISE

| | |
|---|---|
| In Re: | Case No. 19-01069-JMM |
| WILLIAM E. DEMPSEY, II, and AMY D. DEMPSEY, | Chapter 11 |
| Debtors and Debtors in Possession. | |

**DEBTORS-IN-POSSESSION'S MEMORANDUM IN SUPPORT OF OBJECTION TO BRUNOBUILT, INC.'S MOTION TO EXTEND DEADLINE TO OBJECT TO INTERIM FEE APPLICATION**

The Debtors-in-Possession in the above-described Chapter 11 bankruptcy case, WILLIAM E. DEMPSEY, II and AMY D. DEMPSEY (the "DIP"), by and through their counsel, Roark Law Offices, file this Memorandum in support of their OBJECTION TO BRUNOBUILT, INC.'S MOTION TO EXTEND DEADLINE TO OBJECT TO INTERIM FEE APPLICATION filed as Docket No. 172 and state as follows:

**I.**

**There is no Malpractice Claim against DCCC**

1.      On April 28, 2020, litigation counsel for the DIP, Davison, Copple, Copple, & Copple LLP (DCCC) filed their first interim fee application as Docket No. 146. The deadline to respond to this application was May 22, 2020. On May 22, 2020, creditor BrunoBuilt, Inc. filed a

<u>EXHIBIT A</u>

1

motion seeking more time to Object (Docket No. 159). BrunoBuilt, Inc.'s Motion should be denied as set forth herein and in the concurrently filed declaration of William E. Dempsey, II (the "Dempsey Decl." at Docket No. 174), and the interim fee application should be granted.

2.    In its Motion (Docket No. 159), BrunoBuilt, Inc. alleges that it is the largest creditor in this case. Motion, at ¶1.  However, BrunoBuilt, Inc.'s claim is now the subject of an objection (see Docket No. 165), and its claim is unliquidated and disputed in any event. Accordingly, it is unclear at this time whether BrunoBuilt, Inc. is actually the largest creditor in this case.

3.    More substantively, BrunoBuilt, Inc. alleges that it needs more time to investigate, propound and complete discovery on two alleged claims: (1) the Dempseys' alleged claims against the Terra Nativa Professionals, and (2) the alleged "malpractice" claims against its own counsel, Davison, Copple, Copple, & Copple LLP (DCCC), which malpractice claim is made out of whole cloth by BrunoBuilt, Inc. and his counsel.

4.    With respect to the Debtors' claims against the Terra Nativa Professionals, as set forth in the concurrently filed Dempsey Decl., the litigation against the Terra Nativa Professionals, like with all litigation, carries risks. Prepetition, the Dempseys chose not to pursue any claims against the Terra Nativa Professionals, stating in  Mr. Dempsey's declaration that "we did not have the financial resources to simultaneously defend the BrunoBuilt suit and also to litigate against the Third Parties, especially in light of the expert costs that would be involved." Dempsey Decl. ¶10. "Further, we continued to desire to avoid additional litigation." Ibid.

5.    Mr. Dempsey further testifies in his declaration that, "Mr. Copple and Mr. Band discussed with Amy and me the possibility of filing additional claims against the Third Parties on multiple occasions."  Dempsey Decl. ¶12.  "Amy and I made the decision not to pursue such claims based on our own personal understanding of our finances and emotional capacity for additional litigation."  Ibid.  "In point of fact, the litigation with BrunoBuilt alone pushed Amy and me to the financial brink and by 2019 we had instructed Davison Copple to modify our litigation strategy to proceed as inexpensively as possible."  Ibid.

6.    With respect to any statute of limitations on the claims against the Terra Nativa

<u>EXHIBIT A</u>

Professionals, Mr. Dempsey testifies, "Terry C. Copple and Michael E. Band, discussed with Amy and me the possibility of making claims against such Third Parties on multiple occasions prior to the expiration of any applicable statutes of limitation." Dempsey Decl. ¶4.

7.      It is clear from Mr. Dempsey's declaration, that the Dempseys made informed decisions with respect to any litigation against the Terra Nativa Professionals, that they were fully advised, and that no malpractice claim against DCCC can credibly be made. This allegation of malpractice against DCCC is simply a false and ruthless allegation made by BrunoBuilt, Inc. and his counsel in order to attempt to shake the Dempseys' confidence in their counsel and derail this Chapter 11 case.

8.      Moreover, assuming arguendo that the Dempseys were not advised about any statute of limitations, which they were, the DIP has researched and has advised BrunoBuilt, Inc.'s counsel on many occasions that the statute of limitations will not begin to run on these claims until the underlying claim has been paid or discharged.[1] Accordingly, since the underlying damages claim has not yet been "paid or discharged," the statute of limitations has not begun to run.

9.      Notwithstanding being advised of the foregoing, BrunoBuilt, Inc. and his counsel continue to push this narrative before the Court.

## II.

## The Status of the Terra Nativa Claims, Postpetition

10.      During this Chapter 11 case, notwithstanding the fact that the Dempseys prepetition chose not to pursue the Terra Nativa Professionals, the DIP has also gone back and reassessed the

---

[1] "It is well established that under the common law, a person who without fault on his part is compelled to pay damages occasioned by the negligence of another is entitled to indemnity." *Indus. Indem. Co. v. Columbia Basin Steel & Iron Inc.*, 93 Idaho 719, 723, 471 P.2d 574, 578 (1970).  The right to indemnity is an equitable principle that has been preserved by statute. I.C. § 6–804(2). "The rule, recognized in nearly all jurisdictions, including Idaho, is that the cause of action for contribution or indemnity is distinct from the underlying cause of action, and the time from which the statute of limitations for such a cause of action begins to run is when the underlying claim, judgment, or settlement is paid or discharged." *Schiess v. Bates*, 107 Idaho 794, 796, 693 P.2d 440, 442 (1984), *opinion reinstated,* 109 Idaho 10, 704 P.2d 342 (1985) (quoting *May Trucking Co. v. Int'l Harvester Co.*, 97 Idaho 319, 322, 543 P.2d 1159, 1162 (1975).

EXHIBIT A

potential recovery vs. the potential cost of litigation against the Terra Nativa Professionals, and has determined that it would not be feasible to proceed financially against the Terra Nativa Professionals, at least on an hourly fee basis.

11.     Notwithstanding the foregoing, the DIP is currently in consultation with an attorney experienced in construction defect litigation to assess whether this matter could feasibly go forward on a contingency fee basis. The DIP is not ready as of the date of this filing to specify who they are consulting with as the attorney has not yet agreed to be hired, and the DIP is not seeking to pay them, but the DIP will make all disclosures required once the DIP determines which course of action to take. Should the DIP determine it would be desirable to hire this counsel to either write a report and analysis that it could provide to the Court or creditors under seal, and/or move forward with litigation on a contingency fee basis, and the attorney agrees to take the case, an employment application for this attorney will be filed to handle this matter.

12.     In any event, a brief analysis of this claim will be (1) set forth in an amended schedule B, as was always intended, and (2) a detailed analysis will be set forth in the Plan and Disclosure statement, which are soon to be filed.

### III.

### The DIP is in the Process of Amending Their Schedules with Respect to Several Matters

13.     BrunoBuilt, Inc. asserts in paragraph 12 of its Motion that the Debtors "have pointedly refused to list such claims [against Terra Nativa] in their schedules." This is provably false. In the letter from Attorney Roark to Mr. Faucher dated April 4, 2020, Ms. Roark, attorney for the DIP, advised Mr. Faucher that the Debtors, quote, "We will amend Schedule B to list these [REDACTED] claims…."

14.     The DIP does not want to muddy up the case docket with multiple amendments for various items. Doing so would not help keep the docket clean for the parties or the Court. The DIP has been waiting to obtain the real estate appraisal before it makes amendments to their schedules so all of the amendments can be done at one time. Had BrunoBuilt, Inc. not objected to the estate hiring a real estate appraiser, we would have obtained an order, and an appraisal, and amended the

### EXHIBIT A

Schedules long before now. Because BrunoBuilt, Inc. continues to throw wrenches into this case, he can just wait until the DIP has all the information it needs, and then will make the amendments necessary.

**IV.**

**BrunoBuilt, Inc.'s Request for More Time to Object to the DCCC Interim Fee Application is not Warranted, and is just an Abuse of the DIP.**

15.     Despite the fact that BrunoBuilt, Inc.'s counsel has repeatedly stated that this case is going nowhere and asked why has the Debtor not done [fill in the blank] yet, this case *is moving forward* while BrunoBuilt, Inc. asserts objection after objection to virtually every motion and application filed by the DIP. This is just another example of BrunoBuilt, Inc. trying to throw this case off course. If BrunoBuilt, Inc. had a valid objection to make with respect to the interim fee application, he should have made it timely.

**V.**

**The Estate Will Not Be Harmed if The DCCC Interim Fee Application is Paid, But it May be Harmed if the Fee Application is *not* paid.**

16.     As BrunoBuilt, Inc. states in paragraph 24 of its Motion, DCCC will have to file a final fee application for approval of all its interim fees. If DCCC or any other professional is found to have taken any action warranting disgorgement of the fees, the Court will so order at that time, and the funds will be retuned to the estate.

17.     If the DCCC firm are not paid on an interim basis, the Estate can suffer harm since DCCC may not be able to effectively represent the DIP with respect to the issues raised in the state court litigation.

18.     Accordingly, the Estate will suffer no harm to pay its special litigation counsel on an interim basis as allowed by the Bankruptcy Code, and DCCC's application should be granted.

19.     The Motion by BrunoBuilt, Inc. is simply a self-interested attempt to keep the DIP from being able to fund a defense against his claim.

**EXHIBIT A**

## VI.

### BrunoBuilt, Inc. Propounded Discovery with Respect to a Matter Which Was Not Yet at Issue When the Discovery was Propounded

20.　　Discovery in Bankruptcy is only allowed in Adversary Proceedings and in "contested matters" under Bankruptcy Rule 9014. BrunoBuilt, Inc. propounded discovery on June 2, 2020, on the Dempseys and on DCCC with respect to its Motion to Extend Deadline to Object to the Interim Fee Application for Compensation of Michael E. Band of Davison, Copple, Copple, and Copple LLP, filed on May 22, 2020. The motion seeking more time does not render the underlying matter "contested" for the purposes of discovery. It is simply a request for more time to do something. Had BrunoBuilt, Inc. filed an objection to the DCCC fee application, the matter would be contested.[2] Accordingly, BrunoBuilt, Inc.'s request for more time to do what it should have done if it had any cause to (which it does not), should not be extended, and discovery was not appropriate when it was served.

21.　　Notably, the DIP responded to a very extensive 2004 Request by BrunoBuilt, Inc. earlier in this case, producing close to 2,000 documents. At this point, BrunoBuilt, Inc. is just harassing the Dempseys with endless requests.

### VII.

### Conclusion

22.　　Mr. Dempsey's accompanying declaration should put the "malpractice" matter against DCCC to rest. With respect to the alleged claims against the Terra Nativa Professionals, the DIP will update the Court and all parties with respect to its further analysis of the claims when it files its amended schedules, files its Plan and Disclosure Statement setting forth the analysis, and/or files an employment application of independent counsel to formally review and/or prosecute the claims, if the independent review deems it financially feasible for the Estate to do so.

---

[2] "In bankruptcy, any dispute not qualifying as an adversary proceeding under Rule 7001 of the Federal Rules of Bankruptcy Procedure (Fed. R. Bankr. P. 9014). A contested matter is initiated by a party in interest, including a debtor, filing a motion requesting relief (rather than a complaint) in the context of a main bankruptcy proceeding. When a party objects to the motion the matter is considered contested." From Westlaw Glossary.

EXHIBIT A

WHEREFORE, BrunoBuilt, Inc.'s Motion should be denied. He should not have additional time to object to the DCCC interim fee application, which time expired on May 23, 2020. The interim fee application of Mike E. Band of Davison, Copple, Copple & Copple, LLP should be granted and be allowed the total sum of fees and expenses of $26,323.54, to be paid by the Debtors-in-possession from their earnings upon entry of the Order on this Application, subject to a Final Order at the conclusion of this case, or such amount as the Court shall deem reasonable and just, and payable as part of the administration of the estate.

DATED: June 8, 2020                                ROARK LAW OFFICES


_____
Holly Roark, counsel for Debtors-in-Possession

EXHIBIT A

<u>CERTIFICATE OF SERVICE</u>

     I HEREBY CERTIFY that ON June 8, 2020, I filed the forgoing document electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Holly Roark on behalf of Debtors-in-Possession <u>holly@roarklawboise.com</u>, <u>courtnotices@roarklawoffices.com</u>

Robert A Faucher on behalf of Creditor BrunoBuilt, Inc.
rfaucher@hollandhart.com, boiseintaketeam@hollandhart.com;spturner@hollandhart.com

Philip John Griffin on behalf of Creditor BrunoBuilt, Inc.
PJGriffin@hollandhart.com, boiseintaketeam@hollandhart.com;njhammond@hollandhart.com

Jesse A.P. Baker on behalf of Creditor Bank of America (NC) ecfidb@aldridgepite.com, JPB@ecf.courtdrive.com

Lesley Bohleber on behalf of Creditor Bank of America, N.A. ecfidb@aldridgepite.com, llueke@ecf.courtdrive.com

Trevor L Hart on behalf of Creditor Washington Trust Bank
tlh@perrylawpc.com, jks@perrylawpc.com;mbp@perrylawpc.com;taw@perrylawpc.com

Scott B Muir on behalf of Interested Party CITY OF BOISE
BoiseCityAttorney@cityofboise.org

Brett R Cahoon on behalf of U.S. Trustee US
Trustee ustp.region18.bs.ecf@usdoj.gov

     AND I FURTHER CERTIFY that on such date I served the foregoing on the following non CM/ECF Registered Participants in the manner indicated:

     Via first class mail, postage prepaid addressed as follows:

N/A

/s/ *Holly Roark*

_____
Holly Roark

<u>EXHIBIT A</u>

EXHIBIT B

Holly Roark, ISB No. 7143
**ROARK LAW OFFICES**
950 Bannock St. Ste. 1100
Boise, ID 83702
Telephone: (208) 536-3638
Facsimile: (310) 553-2601
Email: holly@roarklawboise.com

*Counsel for Debtors-in-possession*

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF IDAHO – BOISE

| | |
|---|---|
| In Re: | Case No. 19-01069-JMM |
| WILLIAM E. DEMPSEY, II, and AMY D. DEMPSEY, | Chapter 11 |
| Debtors and Debtors in Possession. | |

**DECLARATION OF WILLIAM E. DEMPSEY, II, IN SUPPORT OF DEBTORS' OBJECTION TO BRUNOBUILT, INC.'S MOTION TO EXTEND DEADLINE TO OBJECT TO INTERIM FEE APPLICATION**

I, William E. Dempsey, II, declare as follows:

1.      I am one of the Debtors and Debtors-in-Possession in the above-referenced case.  I have personal knowledge of the facts set forth herein and if called as a witness I could and would testify thereto truthfully.

2.      It is my understanding that creditor BrunoBuilt, Inc. ("BrunoBuilt") asserts in this matter that Amy Dempsey and I, as Debtors and Debtors-in-Possession, should list on our asset schedule a potential malpractice claim against Davison, Copple, Copple & Copple, LLP and its attorneys, Terry C. Copple and Michael E. Band (collectively, "Davison Copple") in connection with their representation of Amy and me in the dispute arising from the Construction Contract at 238 Alto Via Ct. in Boise, Idaho including the litigation filed the Fourth Judicial District of the State of Idaho styled as BrunoBuilt, Inc. v. Dempsey et al., Ada County Civil Case No. CV01-17-23686 (the "BrunoBuilt v. Dempsey Case").

<u>EXHIBIT B</u>

3.      It is my further understanding that the basis of BrunoBuilt's contention in this regard is that we did not sue, prior to the expiration of applicable statutes of limitation, any third parties (*e.g.*, the architectural and engineering firms who provided services related to the lot and home, Boise City, etc. (the "Third Parties")) for damages in relation to the landslide affecting Alto Via Ct. from which the BrunoBuilt v. Dempsey Case arose.

4.      The purpose of this declaration is to explain and confirm to the Court that Davison Copple, and specifically Terry C. Copple and Michael E. Band, discussed with Amy and me the possibility of making claims against such Third Parties on multiple occasions prior to the expiration of any applicable statutes of limitation.

5.      BrunoBuilt's complaint in the BrunoBuilt v. Dempsey Case was filed on December 27, 2017.  I emailed a copy to Mr. Copple on December 29, 2017.  Amy and I met with Mr. Copple and Mr. Band on January 8, 2018, in Mr. Copple's office to discuss his analysis of the Complaint and the path forward in litigation.  During this meeting, one of the topics that was discussed was the possibility of suing the Third Parties.  Amy and I inquired as to the costs of pursuing the claims in terms of attorneys' fees, expert costs, and time.  Mr. Copple advised that the expert costs and attorney fees could be significant as it was likely to involve extensive expert testimony to establish negligence and that litigating with insured parties is often contentious.  Mr. Copple advised that litigating with these Third Parties would likely necessitate the retention of several experts to generate reports and provide testimony, including experts in the fields of engineering, architecture, and land use development and planning.  Amy and I advised Mr. Copple that we did not have the financial resources to simultaneously defend against BrunoBuilt while litigating with these additional parties; nor were we personally interested in embarking upon additional litigation.

6.      On the morning of Monday, April 2, 2018, Amy and I received an email from Mr. Band to which was attached a PDF copy of a letter from BrunoBuilt's attorney Wyatt Johnson proposing a way to settle the case.  A true and accurate copy of this letter we received is attached hereto as EXHIBIT A.  This letter stated, in relevant part:

EXHIBIT B

At this point in time, BrunoBuilt has suits filed against the engineers, the City of Boise, and the developer to pursue its damages. Dempseys have filed no claims. It is possible that if Dempseys wait until the completion of this litigation, the applicable statutes of limitations will prevent Dempseys from bringing any claims. As part of a settlement, BrunoBuilt could assign its pending claims to Dempseys, and they could step in and pursue their damages for the increased contact cost and their diminished market value. BrunoBuilt could also provide copies of the substantial materials that have been collected in discovery and investigation. The materials consist of tens of thousands of pages.

7.    The foregoing letter (Ex. A) prompted a meeting at the office of Davison Copple that afternoon at 1:30 p.m. to discuss Mr. Johnson's letter and proposal.  Present at the meeting were me, Amy, Mr. Copple, and Mr. Band.  During this meeting we again discussed pursuing claims against the Third Parties.  It was discussed that the claims might expire as noted in Mr. Johnson's letter.  We confirmed to Mr. Copple and Mr. Band that we understood this risk and that we did not desire to expand the litigation because we had neither the financial nor emotional bandwidth to do so.  For the same reason, we declined to take an assignment of the claims as proposed by Mr. Johnson.

8.    I understand that Mr. Band made a note to the file after this meeting, which is attached hereto as Exhibit B.  I have reviewed these notes and confirm that they accurately summarize our April 2, 2018, phone call.

9.    On or about May 10, 2018, we learned that Rick Stacey and Chad Nicholson of the law firm McConnell, Wagner, Sykes, and Stacey were replacing Wyatt Johnson of Angstman Johnson as BrunoBuilt's attorneys.[1]  We viewed this as a potential positive, as we knew that Stacey had represented the other Alto Via homeowners and had access to expert witnesses which could be leveraged by BrunoBuilt against the parties it had sued to recover from them rather than us.

10.    BrunoBuilt's change of attorneys prompted a phone call on May 14, 2018, to discuss the change of attorneys as well as potential benefits in BrunoBuilt's efforts to recover against the professionals.  The participants in the call were me, Amy, Mr. Copple, and Mr. Band.  During this

---

[1] In fact, BrunoBuilt later sued Mr. Johnson for malpractice, which lawsuit remains pending: BrunoBuilt, Inc. v. Angstman Johnson, PLLC and Wyatt B. Johnson, Ada County Civil Case No. CV01-18-11685.

EXHIBIT B

call, we noted that Chad Nicholson had advised us in the spring of 2016 that we could not participate in the lawsuit filed by the other Alto Via homeowners because we were not owners of the property. BrunoBuilt was (and remains) the owner. This, in turn, prompted yet another discussion about whether we could or should file their own actions against the various Third Parties. Mr. Copple again advised we might still have the option of pursuing claims against these Third Parties. We again asked about the potential costs and likelihood of success. Mr. Copple advised that he could not predict whether the claims would be successful and that the expert costs and attorney fees would likely be significant. We again confirmed that we did not have the financial resources to simultaneously defend the BrunoBuilt suit and also to litigate against the Third Parties, especially in light of the expert costs that would be involved. Further, we continued to desire to avoid additional litigation.

11.    I understand that Mr. Band took notes during this May 14, 2018, telephone call, which are attached hereto as EXHIBIT C. I have reviewed these notes and confirm that they accurately summarize our May 14, 2018, call.

12.    As described above, Mr. Copple and Mr. Band discussed with Amy and me the possibility of filing additional claims against the Third Parties on multiple occasions. Amy and I made the decision not to pursue such claims based on our own personal understanding of our finances and emotional capacity for additional litigation. In point of fact, the litigation with BrunoBuilt alone pushed Amy and me to the financial brink and by 2019 we had instructed Davison Copple to modify our litigation strategy to proceed as inexpensively as possible.

13.    Based on the foregoing, there is no merit whatsoever to BrunoBuilt's contention that we should list on our asset schedule a malpractice claim against Davison Copple.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration was executed on June 4, 2020, at Boise, Idaho.

William E. Dempsey, II

**DECLARATION OF WILLIAM E. DEMPSEY, II, IN SUPPORT OF DEBTORS' OBJECTION TO BRUNOBUILT, INC.'S MOTION TO EXTEND DEADLINE TO OBJECT TO INTERIM FEE APPLICATION - 4**

EXHIBIT B

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that ON June 8, 2020, I filed the forgoing document electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Holly Roark on behalf of Debtors-in-Possession <u>holly@roarklawboise.com</u>, <u>courtnotices@roarklawoffices.com</u>

Robert A Faucher on behalf of Creditor BrunoBuilt, Inc.
rfaucher@hollandhart.com, boiseintaketeam@hollandhart.com;spturner@hollandhart.com

Philip John Griffin on behalf of Creditor BrunoBuilt, Inc.
PJGriffin@hollandhart.com, boiseintaketeam@hollandhart.com;njhammond@hollandhart.com

Jesse A.P. Baker on behalf of Creditor Bank of
America (NC) ecfidb@aldridgepite.com,
JPB@ecf.courtdrive.com

Lesley Bohleber on behalf of Creditor Bank of
America, N.A. ecfidb@aldridgepite.com,
llueke@ecf.courtdrive.com

Trevor L Hart on behalf of Creditor Washington Trust Bank
tlh@perrylawpc.com, jks@perrylawpc.com;mbp@perrylawpc.com;taw@perrylawpc.com

Scott B Muir on behalf of Interested Party CITY OF BOISE
BoiseCityAttorney@cityofboise.org

Brett R Cahoon on behalf of U.S. Trustee US
Trustee ustp.region18.bs.ecf@usdoj.gov

AND I FURTHER CERTIFY that on such date I served the foregoing on the following non CM/ECF Registered Participants in the manner indicated:

Via first class mail, postage prepaid addressed as follows:

N/A

/s/ *Holly Roark*
_____
Holly Roark

# EXHIBIT "A"

EXHIBIT B

# ANGSTMAN JOHNSON

## ATTORNEYS & COUNSELORS

**MEMBERS**
THOMAS J. ANGSTMAN
WYATT B. JOHNSON
MATTHEW T. CHRISTENSEN

**WYATT B. JOHNSON, ESQ.**
E-MAIL: WYATT@ANGSTMAN.COM

3649 N. LAKEHARBOR LANE
BOISE, IDAHO 83703
TELEPHONE (208) 384-8588
FACSIMILE (208) 853-0117
WWW.ANGSTMAN.COM

**ASSOCIATES**
ANTHONY M. SHALLAT
AUBREY RICHARDSON
KALEENA M. BECK
CHAD R. MOODY
KYLIE L. MADSEN
MARGO M. ANDERSON

**OF COUNSEL**
NATASHA N. HAZLETT
ERIN J. WYNNE

March 30, 2018

Sent Via Email: tc@davisoncopple.com;
band@davisoncopple.com

Terry C. Copple
Michael E. Band
Davison Copple, Copple & Copple
199 N. Capitol Blvd., Ste. 600
PO Box 1583
Boise, ID 83701

RE:    BrunoBuilt v Dempsey – SETTLEMENT DISCUSSION IRE 408
Our File No. 5634-039

Dear Terry and Michael:

I am writing this letter to follow up on some prior informal discussions we have had about a possible resolution to this case.

You both understand the substance of this case. BrunoBuilt has a contract claim against Dempseys. The City of Boise is currently reviewing plans for a retaining wall that will be installed to stabilize the topsoil on the property. Once that is installed, the City should issue an occupancy permit and the construction will be complete.

Under the contract, it is clear that, upon completion, Dempseys will need to pay the contract purchase price, plus the charges that were required in order to cure the additional problems created by the landslide. Those extra charges are not small. While I certainly intend to address those with you, I do not necessarily want to get lost in the weeds on that point right now.

EXHIBIT A

EXHIBIT B

Page 2
March 30, 2018

What I prefer to do is propose a means for settling this case that would resolve the Dempseys' obligations to BrunoBuilt, but also put them in a position to minimize their losses.

As you know, if BrunoBuilt succeeds, Dempseys will either be forced to buy the house, or pay the difference between the contract price and the market value of the house. They will also be paying your attorney fees and BrunoBuilt's. Either way, this is undoubtedly a substantial sum. I expect that your clients are experiencing a certain amount of paralysis because it would be difficult to put together the cash that would be necessary to perform any sort settlement. However, there is a solution. Banner Bank, the construction lender on this project, needs to get this construction loan off its books. The loan has been open too long and the banking regulators tend to use "troubled" loans to reduce banks' lending ability. If, on the other hand, this debt was carried as a standard residential loan on a 30 year term, it would no longer be a problem loan. Based on prior conversations Robert Bruno has had with Banner Bank representatives, we believe that Banner Bank would be willing to finance Dempseys' contractual purchase price for the Alto Via property. While other banks might not be willing to lend the full amount because of appraisal problems or other concerns, it appears that Dempseys can circumvent that problem by working with Banner Bank. This is a strategy that helps both Dempseys and Banner Bank.

Obviously, the house will be much more expensive because of the costs of addressing the landslide. At this point in time, BrunoBuilt has suits filed against the engineers, the City of Boise, and the developer to pursue its damages. Dempseys have filed no claims. It is possible that if Dempseys wait until the completion of this litigation, the applicable statutes of limitations will prevent Dempseys from bringing any claims. As part of a settlement, BrunoBuilt could assign its pending claims to Dempseys, and they could step in and pursue their damages for the increased contact cost and their diminished market value. BrunoBuilt could also provide copies of the substantial materials that have been collected in discovery and investigation. The materials consist of tens of thousands of pages.

I realize that the Dempseys may not want the house on Alto Via. Because this is a contract claim, it doesn't really matter if they want the house or not. Regardless, they still don't need to live there. If they close on the property, they would then have the option to rent the property out and offset some or all of the expense they have incurred to acquire the property. People want to live in the foothills. Dempseys will undoubtedly be able to rent the property until the market no longer stigmatizes the property. We believe this will happen. Cartwright Engineers has analyzed the property and determined that the house itself sits over solid subsurface material which is preventing the house from sliding. (A copy of the report is attached.) The Dempseys are not geologists or geotechnical engineers. They should be able to reasonably rely upon the conclusions of the experts, Cartwright, if they choose to lease the property to tenants.

What I am proposing is a workable way out for the Dempseys. We can add up the money to the penny, later. Right now, we should confer and see if this proposed resolution, in principle, is a possibility.

EXHIBIT A

<u>EXHIBIT B</u>

Page 3
March 30, 2018

     Right now, I see this as a discussion, rather than a full offer.  We would need to work out the final price and other details in order to get this resolved. However, I would like a response by the close of business, April 4, 2018, as to whether the Dempseys are willing to seriously explore this option.  I look forward to hearing from you.

Very truly yours,

Wyatt Johnson
Attorney at Law

WJ:wj

EXHIBIT A
EXHIBIT B

# EXHIBIT "B"

EXHIBIT B

2018.04.02 - Note to file.txt

NOTE TO FILE:

Terry Copple and Mike Band met with clients Bill and Amy Dempsey April 2, 2018, at
1:30.  The topic of the meeting was a settlement proposal sent by the attorney for
BrunoBuilt, Inc.
* It was discussed that settlement discussions could be premature at this time.
* Pursuing claims against engineers/City/Terra Nativa was discussed. The possibility
that claims might expire as noted in the letter was discussed.  The Dempseys
confirmed that they understood this risk and that they did not desire to litigate
with these parties.  Clients prefer to continue with the original strategy of
allowing BrunoBuilt to pursue these claims and hope that this will substantially
reduce or eliminate BrunoBuilt's claims against the Dempseys.
* After discussing the proposal, the Dempseys chose not to pursue the settlement
options proposed by Johnson at this time.

EXHIBIT B
EXHIBIT B

# EXHIBIT "C"

EXHIBIT B



BOISE/TN

DO: Find out if Stacey Plans to Serve

## DEMPSEY CALL   5/14/18   @ 9:30   CLIENTS TO CALL

### TOPICS to COVER
- BRUNO NEW ATTORNEYS
  - RICK STACEY
  - WHY?
  - POTENTIAL BENEFITS
- REVIEW STATUS
- SETTLEMENT options/Path/outlook
- _____ (?)

▶ Angstman/Johnson out // NWSS/Nicholson IN
  WYATT                    STACEY

  → Bill: TALKED to AFTER Mtg / told
WHEN?        can't BE INVOLVED w/ other Homeowner
April/May
  16        action B/C NOT owner of Lot/Home
          IS THIS A CONFLICT?

▶ SUE other PARTIES NOW? (City/TN/UTI/?)
  - BRUNO still owns ← REAL PARTY IN INTEREST
    (sharing?)
  TCC: "MOST protection"/MOST EXPENSIVE to SUE
                          Expert costs

  Bill+Amy: "still can't / Don't want MORE Litigation
                                              PROB
  "will BB PAUSE CASE AGAINST US?" NO
  raise
  result consol w/ others → NOG BEHIND
  "continue following BEHIND other CASES"
  ← global settlement

EXHIBIT B   EXHIBIT C

DO: • MONITOR OTHER CASES
      get DOCS: CV01-16-2291S
                    - 17-17395
   • LOOK AT CONFLICT 9
   • CALL STACEY/NICHOLSON

EXHIBIT B        EXHIBIT C