Holly Roark (SBN 7143)
ROARK LAW OFFICES
950 Bannock St. Ste. 1100
Boise, ID 83702
T (208) 536-3638
F (310) 553-2601
holly@roarklawboise.com

*Counsel for Debtors-in-Possession*

UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

| | |
|---|---|
| In Re:<br><br>WILLIAM E. DEMPSEY, II, and<br>AMY D. DEMPSEY,<br><br>Debtors and Debtors-in-Possession. | Bkr. Case No. 19-01069-JMM<br>Chapter 11 |

**CHAPTER 11 PLAN OF REORGANIZATION**

William E. Dempsey, II, and Amy D. Dempsey, the Debtors and Debtors-in-Possession ("Debtors" and "DIP") herein, proposes the following *Chapter 11 Plan of Reorganization* ("Plan"). This Plan treats all of the assets of the DIP, and proposes a resolution of the outstanding claims against it. Reference is made to the Disclosure Statement, distributed with this Plan, which contains a discussion of the DIP's assets, their financial troubles, liquidation alternatives, a summary and analysis of this Plan, and certain related matters. Debtors urge all holders of claims to read this Plan and the Disclosure Statement in their entirety before voting to accept or reject this Plan. It is important that you read this Plan carefully, and in conjunction with the Debtors' *Disclosure Statement* to evaluate the impact such Plan will have upon your claim or interest

**EXECUTIVE SUMMARY**

Under Debtor's proposed Plan of Reorganization, creditors will be paid as follows:

- First, priority creditors will be paid in full as required by the Bankruptcy Code
- Second, secured creditors will be paid under the terms set forth in the Plan
- Third, General Unsecured Creditors with will receive payments over the next five years

Each of these components is discussed in greater detail elsewhere herein.

# ARTICLE I.
# DEFINITIONS, RULES OF INTERPRETATION AND COMPUTATION OF TIME

### 1.1 Scope of Definitions; Rules of Construction.

Except as expressly provided or unless the context otherwise requires, capitalized terms used but not otherwise defined in this Plan shall have the meanings ascribed to them in this Article I. Any term used in this Plan that is not defined herein, but is defined in the Disclosure Statement, the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to it therein. Whenever the context requires, such terms shall include the plural as well as the singular number, the masculine gender shall include the feminine, and the feminine gender shall include the masculine.

### 1.2 Definitions.

1.2.1   "Administrative Claim" means a claim for the cost or expense of administration of this Chapter 11 case, including any actual and necessary expense of preserving or liquidating the estate, any actual and necessary expense of operating the business of the Debtor, and all allowances approved by the Court in accordance with the Bankruptcy Code.

1.2.2   "Administrative Claims Bar Date" shall have the meaning given it in Article 14.1.1 of this Plan.

1.2.3   "Allowed Claim" means a claim or any portion thereof (a) that has been allowed by a Final Order of the Bankruptcy Court or (b) as to which, on or by the Effective Date, (i) no proof of claim has been filed with the Bankruptcy Court and (ii) the liquidated and non-contingent amount of which is scheduled, other than a claim that is scheduled at zero, in an unknown amount, or as disputed, or (c) for which a proof of claim in a liquidated amount has been timely filed with the Bankruptcy Court pursuant to the Bankruptcy Code, any Final Order of the Bankruptcy Court or other applicable bankruptcy law, and as to which either (i) no objection to its allowance has been filed within the periods of limitation fixed by this Plan, the Bankruptcy Code or by any order of the Bankruptcy Court, or (ii) any objection as to its allowance has been settled or withdrawn or has been denied by a Final Order, or (d) is reflected in a schedule of Allowed Claims, if any, filed from time to time with the Bankruptcy Court by the Debtor, or (e) that is expressly allowed in a liquidated amount in this Plan. An Allowed Claim (a) includes a Disputed Claim to the extent such Disputed Claim becomes allowed after the Effective Date; and (b) shall be net of any valid setoff exercised with respect to such claim under the provisions of the Bankruptcy Code and applicable law. Unless otherwise specified herein, in section 506(b) of the Bankruptcy Code, or in any order of the Bankruptcy Court, "Allowed Claim" shall not, for purposes of distributions under this Plan, include for prepetition claims, interest on such claim or claims accruing from or after the Petition Date.

1.2.4   "Avoidance Actions" means any and all actions, causes of action, suits, accounts, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment and claims existing or arising under Chapter 5 of the Bankruptcy Code, including but not limited to state law remedies available pursuant to Section 544 of the Bankruptcy Code, whether known or unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, unsecured and whether asserted or assertable directly or derivatively, in law, equity or otherwise.

1.2.5   "Bankruptcy Code" means the Bankruptcy Reform Act of 1978, as codified in Title 11 of the United States Code, 11 U.S.C. §§101-1532, as now in effect or hereafter

amended, and as applicable to Debtor's Chapter 11 case.

1.2.6   "Bankruptcy Court" means the United States Bankruptcy Court for the District of Idaho or any other court with jurisdiction over Debtor's Chapter 11 case.

1.2.7   "Bankruptcy Rules" means, collectively, the Federal Rules of Bankruptcy Procedure promulgated under section 2075 of title 28 of the United States Code and the Official Bankruptcy Forms, the Federal Rules of Civil Procedure, as applicable to the Debtor's Chapter 11 case or proceedings therein, and the Local Rules of the Bankruptcy Court, all as now in effect or hereafter amended, and as applicable to Debtor's Chapter 11 case.

1.2.8   "Business Day" means any day on which commercial banks are open for business in Boise, Idaho, excluding Saturdays, Sundays or "legal holidays" (as defined in Bankruptcy Rule 9006(a)).

1.2.9   "Case Interest Rate" means the federal judgment rate described in 28 U.S.C. § 1961 in effect on the Petition Date.

1.2.10   "Causes of Action" means, individually or collectively, any and all actions, causes of action, suits, accounts, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment and claims held by Debtor as of the Effective Date, including but not limited to Avoidance Actions, whether known or unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, unsecured and whether asserted or assertable directly or derivatively, in law, equity or otherwise.

1.2.11   "Class" means one of the classes of claims listed in Article II of this Plan.

1.2.12   "Confirmation" means entry by the Bankruptcy Court of the Confirmation Order.

1.2.13   "Confirmation Date" means the date of entry of the Confirmation Order on the docket maintained by the Clerk of the Bankruptcy Court with respect to this Chapter 11 case.

1.2.14   "Confirmation Hearing" means the hearing held by the Bankruptcy Court pursuant to section 1128(a) of the Bankruptcy Code, to consider confirmation of this Plan under section 129 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

1.2.15   "Confirmation Order" means the order of the Bankruptcy Court confirming this Plan under section 1129 of the Bankruptcy Code.

1.2.16   "Debtor" or "Debtors" means William E. Dempsey, II, and Amy D. Dempsey including in their capacity as debtor- in-possession under sections 1107 and 1108 of the Bankruptcy Code.

1.2.17   *Reserved.*

1.2.18   "Disclosure Statement" means the disclosure statement that relates to this Plan, as approved by the Bankruptcy Court as containing adequate information pursuant to section 1125 of the Bankruptcy Code and Fed. R. Bankr. P. 3017, as such disclosure statement may be amended, modified or supplemented from time to time.

1.2.19   "Disputed Claim" means any claim against or Interest in Debtor or any portion thereof that is not an Allowed Claim or a disallowed claim, as the case may be.

1.2.20   "Distribution Date" means the date, occurring within one hundred twenty (120) days of the Effective Date or as soon as is practicable thereafter, on which the Debtor first makes distributions under this Plan, unless otherwise specified.

1.2.21 "Effective Date" means the first Business Day on which all conditions set forth in Article 9.1 of this Plan have been either satisfied or waived as provided in Article 9.2 of this Plan.

1.2.22 "Final Order" means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction with respect to the subject matter, which has not been reversed, stayed, modified or amended, and as to which the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought.

1.2.23 "General Unsecured Claim" means a pre-petition unsecured claim against Debtor that is not entitled to priority under section 507 of the Bankruptcy Code, including any claim for money borrowed or guaranteed, rejection of executory contracts, unsecured deficiency claims, and claims for indemnification, if any.

1.2.24 "Interest" means the legal, equitable, contractual and other rights of any holder of a stock interest, membership interest, partnership interest or other equity interest in a corporation, limited liability company, limited partnership, general partnership or other entity, whether or not transferable, and any option, warrant or right, contractual or otherwise, to purchase, sell, subscribe for or otherwise acquire or receive any such interest.

1.2.25 "Internal Revenue Code" means the Internal Revenue Code of 1986, as amended from time to time.

1.2.26 "Other Priority Claim" means a claim entitled to priority under section 507(a) of the Bankruptcy Code other than a priority tax claim or an administrative claim.

1.2.27 "Person" means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, trustee, United States Trustee, estate, unincorporated organization, government, governmental unit (as defined in the Bankruptcy Code), agency or political subdivision thereof or other entity.

1.2.28 "Petition Date" means September 17, 2019, the date on which Debtor filed its petition for reorganization relief commencing the Chapter 11 case.

1.2.29 "Plan" means this reorganization Plan proposed by Debtor, together with all exhibits hereto, as it may be further amended, modified or supplemented from time to time in accordance with section 1127 of the Bankruptcy Code, including Plan Supplements, if any.

1.2.30 "Plan Supplement" means the compilation of documents or forms of documents specified in this Plan, including any exhibits to this Plan not included herewith, that may be filed with the Bankruptcy Court on or before the date that is fourteen (14) days prior to the Confirmation Hearing.

1.2.31 "Post-Effective Date Assets" means all property of the kind defined in Section 541, as limited by all subsections of Section 541, of the Bankruptcy Code.

1.2.32 "Pro Rata" means, at any time, the proportion that the face amount of an Allowed Claim in a particular Class bears to the aggregate face amount of all claims (including Disputed Claims, but excluding disallowed claims) in that Class, unless this Plan provides otherwise.

1.2.33 "Professional Fee Claims" shall have the meaning given it in Article 14.1.1 of this Plan.

1.2.34 "Proponent" means DIP.

1.2.35 Reserved

1.2.36 "Reorganized Debtor" means William E. Dempsey, II, and Amy D.

Dempsey after the Effective Date.

        1.2.37  "Secured Claim" means a claim, other than a Setoff Claim, that is secured by a lien that is valid, perfected and enforceable, and not avoidable, on property in which Debtor has an interest, or the proceeds of the sale of such property, to the extent of the value, as of the Petition Date, of such interest or lien as determined by a Final Order of the Bankruptcy Court under section 506 of the Bankruptcy Code or as otherwise agreed upon in writing by the Debtor and the holder of such claim.

        1.2.38  "Setoff Claim" means a claim of holder that has a valid right of setoff with respect to such claim, which right is enforceable under section 553 of the Bankruptcy Code as by a Final Order or as otherwise agreed writing by the Debtor, to the extent of the amount subject to  such right of setoff.

        1.2.39  "Voting Deadline" means the date and time, as fixed by an order of the Bankruptcy Court and set forth in the Disclosure Statement, by which all Ballots to accept or reject this Plan must be received.

### 1.3     Rules of Interpretation.

In this Plan (a) any reference to a contract, instrument, release, indenture or other agreement or document as being in a particular form or on particular terms and conditions means the agreement or document substantially in that form or on those terms and conditions; (b) any reference to an existing document or exhibit means that document or exhibit as it may have been amended, modified or supplemented; (c) unless otherwise specified, all references to Sections, Articles, Schedules and Exhibits are references to Sections, Articles, Schedules and Exhibits of or to this Plan; (d) the words "herein" and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (e) captions and headings to Articles and Sections are for convenience and ease of reference only and are not intended to be a part of or to impact interpretation of this Plan; and (f) the rules of construction in section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply.

### 1.4     Computation of Time.

In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

**ARTICLE II.**

**CLASSIFICATION OF CLAIMS AND INTEREST**

### 2.1     Introduction.

All claims, except administrative claims and priority tax claims, are placed in the Classes set forth below in accordance with section 1123(a)(1) of the Bankruptcy Code. Administrative claims and priority tax claims, as described below, have not been classified and are not entitled to vote on this Plan. A claim is placed in a particular Class only to the extent that the claim falls within the description of that Class, and is classified in other Classes to the extent that any portion of the claim or Interest falls within the description of such other Classes. A claim is also placed in a particular Class for the purpose of receiving distributions pursuant to this Plan only to the extent that such claim is an Allowed Claim in that Class and such claim has not been paid, released, waived or otherwise settled prior to the Effective Date.

All allowed claims and allowed interests have been placed in the following classes:

**2.2.    Unimpaired Claims**

2.2.1    Class 1: Administrative Claims. This consists of the following claims:

A.  Class AC1: Roark Law Offices

B.  Class AC2: Davison, Copple, Copple & Copple, LLP

C.  Class AC3: Petersen Moss Hall & Olsen

D.  Class AC4: Real Estate Appraiser, Jody Graham

E.  Class AC5: U.S. Trustee

2.2.2    Class 2: Priority Tax Claims: This consists of the following claims:
A.  Class PC1: Idaho State Tax Commission (N/A)
B.  Class PC2: Internal Revenue Service (N/A)

**2.3    Impaired Classes of Claims**

2.3.1     Class 3: Secured Claim of Bank of America as reflected in Claim No. 11.

2.3.2     Class 4: Secured Claim of Idaho Central Credit Union as reflected in Claim No. 9.

2.3.3     Class 5: Secured Claim of Idaho Central Credit Union as reflected in Claim No. 10.

2.3.4     Class 6: Secured Claim of Washington Trust Bank.

2.3.5     Class 7: Ada County Treasurer as reflected in Claim Nos. 4, 5, 6, 7, and 8.

2.3.6     Class 8: Contingent Secured Claim of Washington Trust Bank.

2.3.7     Class 9: Unliquidated and Disputed unsecured Claim of BrunoBuilt, Inc. as reflected in Claim No. 2.

2.3.8     Class 10: General Unsecured Claims. Class 10 consists of all General Unsecured Claims that exist against the Debtor/DIP.

**2.4    Equity Holders**

2.4.1     Class 11: Equity Interest Holders. Class 11 consists of all Equity Interests in the Debtor/DIP. This is William E. Dempsey, II, and Amy D. Dempsey an consists of Debtors' ownership interests in assets of the bankruptcy estate, and their claims against the bankruptcy estate, including, but not limited to, their claims of exemption.

**ARTICLE III.**
**TREATMENT OF CLAIMS AND INTERESTS**
**3.1 Administrative and Priority Claims.**

3.1.1 Administrative Claims.

Each holder of an Allowed Claim that is an administrative claim shall receive from the Debtor, in full satisfaction, settlement, release, and discharge of and in exchange for such allowed administrative claim, cash equal to the unpaid portion of such allowed administrative claim on or as soon as reasonably practicable after the latest of (a) ninety (90) days following the Effective Date,

(b) the date that is five (5) Business Days after the date an administrative claim becomes an Allowed Claim, or (c) the date that is five (5) Business Days after the date an administrative claim becomes payable pursuant to any agreement between the Debtor and the holder of an administrative claim, except as otherwise provided for in the Plan, and subject to the requirements of Article 14.1.2 of the Plan for Professional Fee Claims and substantial contribution claims; *provided however*, that obligations incurred by the Debtor after the Confirmation Date, including Professional Fee Claims, shall not be subject to applications to the Bankruptcy Court and may be paid by the Debtor in the ordinary course of business and without further Bankruptcy Court approval.

   A.  Class AC1: Roark Law Offices, Debtor's attorney, shall submit to the Court a fee application within 90 days of the Effective Date. Such amount approved by the Court, minus the retainer held by Roark Law Offices, shall be paid within the first 90 days of the Plan distributions or as otherwise agreed by the parties and as further set forth in the Disclosure Statement. The total approved sum may be paid off early in a lump sum payment from funds on hand, or as the parties may further agree.

   B.  Class AC2: Davison, Copple, Copple & Copple, LLP, Debtors' Special Litigation Counsel shall submit to the Court a fee application within 90 days of the Effective Date. Such amount approved by the Court, minus any retainer held by Davison, Copple, Copple & Copple, LLP, shall be paid within the first 90 days of the Plan distributions or as otherwise agreed by the parties and as further set forth in the Disclosure Statement. The total approved sum may be paid off early in a lump sum payment from funds on hand, or as the parties may further agree.

   C.  Class AC3: Petersen Moss Hall & Olsen, Debtors' Special Litigation Counsel shall submit to the Court a fee application within 90 days of the Effective Date in order to be paid its flat fee of $3,500. In the event the pending analysis of Petersen Moss Hall & Olsen shows that litigation of certain third party claims would be feasible for the Estate to pursue, Petersen Moss Hall & Olsen will be paid on a contingency fee basis as set forth in its retainer agreement, and will submit to the Court a fee application consistent with such an agreement, once litigation has completed trial or settled, and there are funds to distribute.

   D.  Class AC4: Real Estate Appraiser, Jody Graham shall submit to the Court a fee application within 90 days of the Effective Date in order to be paid her flat fee of $2,000. In the event that her testimony is required for litigation, she shall submit fee applications to the Court for payment on an interim basis, and based upon her hourly rate.

   E.  Class AC5: U.S. Trustee. Any U.S. Trustee Fees shall be paid when due.

   3.1.2  Class P1: Priority Tax Claims.

Each holder of an Allowed Claim that is a priority tax claim shall be paid in full with interest therein from the Effective Date of the Plan in equal bi-annual installments due on the first of each April and October, after the Effective Date, with the remaining balance paid on or before September 17, 2024; *provided, however*, that the Debtor reserves the right to pay any allowed priority tax claim or any remaining balance of any allowed priority tax claim, in full at any time on or after the Distribution Date without premium or penalty; and *provided further*, that no holder of an allowed priority tax claim shall be entitled to any payments on account of any interest accrued between the Petition Date and the Effective Date. Such holders of allowed priority tax claims shall accrue interest in accordance with Section 511 of the Bankruptcy Code. The interest rate applicable

to allowed priority tax claims of the Idaho State Tax Commission is five percent (5%).

| Claimant | Amount of Priority Claim | Amount of Each Payment |
|---|---|---|
| Idaho State Tax Commission (N/A) | $0.00 | $0.00 |
| Internal Revenue Service (N/A) | $0.00 | $0.00 |
| TOTAL | $0.00 | $0.00 |

Any portion of any claim referenced above that is not a Priority Claim will be treated as a General Unsecured Claim.

### 3.2 Impaired Class of Claims.

3.2.1 **Class 3**: Secured Claim of Bank of America (hereafter "BOA") as reflected in Claim No. 11. This Claim totaling $11,995.50 as of September 17, 2019, secured by a 2012 BMW X5, and accruing interest and costs, shall be treated as follows:

A. By stipulation of the parties, a true and correct copy of which is attached hereto as Exhibit A (the "Stipulation"), and made a part hereof, the amount of $10,133.20 to be amortized over 60 months at a fixed rate of 4.63% per annum, which represents monthly payments of $189.51 each shall be made.

B. Except as may be modified by agreement of the parties or as set forth in the attached Stipulation (Exhibit A), all documents, including but not limited to Promissory Notes and Security Agreements, between BOA and the Debtors shall remain in full force and effect.

C. BOA shall retain its security interests until paid in full.

D. BOA shall take no action against either Debtors or any co-debtors if Debtors meet these obligations, including exercising its rights under the Stipulation or loan documents.

3.2.2 **Class 4**: Secured Claim of Idaho Central Credit Union ("ICCU"), as reflected in Claim No. 9. This Claim totaling $482,001.53 as of September 17, 2019, secured by the real property located at 1720 E. Sendero Lane, Boise, ID 83712, and accruing interest and costs, shall be treated as follows:

A. To cure the postpetition arrears in the approximate sum of $39,704.88, representing 12 payments of $3,308.74 each, Debtors shall pay $661.75 per month for 60 months.

B. Regular monthly payments in the sum of $3,308.74, or as may be changed from time to time under the Note and Deed of Trust, to resume upon the first day of the month following confirmation of the Plan until all payments are made under the Note and Deed of Trust. Except as may be modified herein or by agreement of the parties, all documents, including but not limited to Promissory Notes and Security Agreements, between ICCU and the Debtors shall remain in full force and effect.

C. ICCU shall retain its security interests until the Claim is paid as set forth herein.

        D.      ICCU shall take no action against either Debtors or any co-debtors if Debtors meet these obligations.

        3.2.3    **Class 5**: Secured Claim of Idaho Central Credit Union ("ICCU"), as reflected in Claim No. 10. This Claim totaling $12,439.20 as of September 17, 2019, secured by a 2011 Mercedes E350, and accruing interest and costs, shall be treated as follows:

        A.      This Claim is undersecured. The value of this vehicle is $10,807.00. Accordingly, the amount of $10,807.00 to be amortized over 60 months at a fixed rate of 2.89% per annum, which represents monthly payments of $193.66 each shall be made.

        B.      ICCU shall retain its security interests until the Claim is paid as set forth herein. Except as may be modified herein or by agreement of the parties all documents, including but not limited to Promissory Notes and Security Agreements, between ICCU and the Debtors shall remain in full force and effect.

        C.      ICCU shall take no action against either Debtors or any co-debtors if Debtors meet these obligations.

        D.      The unsecured portion of this Class 5 Claim in the sum of $1,607.00 shall be paid pro rata as a Class 10 General Unsecured Claim.

        3.2.4    **Class 6**: Secured Claim of Washington Trust Bank ("WTB") totaling $160,024.63, as of September 17, 2019, secured by the real property located at 1720 E. Sendero Lane, Boise, ID 83712, and accruing interest and costs, shall be treated as follows:

        A.      To cure the postpetition arrears in the approximate sum of $16,885.08, representing 12 payments of $1,407.09 each, Debtors shall pay $603.04 per month for 28 months.

        B.      Regular monthly payments in the sum of $1,407.09, or as may be changed from time to time under the Note and Deed of Trust, to resume upon the first day of the month following confirmation of the Plan until all payments are made under the Note and Deed of Trust.

        C.      The Note has a maturity date of January 12, 2023, whereupon the lump sum of $130,032.06 shall be paid to WTB.

        D.      WTB shall retain its security interests until the Claim is paid as set forth herein. Except as may be modified herein or by agreement of the parties all documents, including but not limited to Promissory Notes and Security Agreements, between WTB and the Debtors shall remain in full force and effect.

        E.      WTB shall take no action against either Debtors or any co-debtors if Debtors meet these obligations.

        3.2.5    **Class 7**: Secured Claim of Ada County Treasurer, representing real property taxes, totaling $7,222.66, secured by the real property located at 1720 E. Sendero Lane, Boise, ID 83712, shall be cured within 30 days of the Effective Date. Ada County shall retain its security interests until the Claim is paid as set forth herein.

        3.2.6    **Class 8**: Contingent Secured Claim of Washington Trust Bank. This Claim totaling $90,510.00, as of September 17, 2019, was a cross-collateralized business loan personally guaranteed by the Debtors, and secured by life insurance policies with Prudential Insurance Company of America, the beneficial interest of which were assigned to Washington

Trust Bank. This Claim shall be paid the same dividend as the General Unsecured Claims in Class 10, however, should one of the Debtors die during the course of the Chapter 11 plan repayment period and prior to discharge, this Claim shall be paid in full from the proceeds of the existing insurance policy securing the loan. The assignment of all rights under the insurance policies shall revert back to the Debtors upon discharge, and Washington Trust Bank shall execute any required documents to effectuate such reversion of interest and return of assignment.

      3.2.7    **Class 9**: Unliquidated and Disputed unsecured Claim of BrunoBuilt, Inc. This Claim was Scheduled as a disputed and unliquidated unsecured claim in the sum of $1,332,845.12, which sum is not an admission of the liquidated sum, but was a sum told to Debtors during litigation in the underlying state court case with BrunoBuilt, Inc. BrunoBuilt, Inc. filed a proof of claim, Claim No. 2, alleging a claim of $1,849,168.12. The Debtors have objected to the BrunoBuilt, Inc. proof of claim, and an evidentiary hearing is set for August 18, 2020. This Claim shall be paid the same dividend as the General Unsecured Claims in Class 10 once it is liquidated.

      3.2.8    **Class 10**: General Unsecured Claims. Class 10 consists of all General Unsecured Claims that exist against the Debtors and any creditor not provided plan treatment in the proceeding paragraphs. All such allowed claims shall be paid on a pro-rata basis at an approximate 5% distribution on the following schedule:

      See attached 60-month projected budget and plan payments to each creditor, Exhibit B hereto.

The claims included in this class are those filed as claim numbers 1, 3, and 12, and those scheduled in the Debtors' Schedules as general unsecured claims, unless they are separately classed, but receiving the same distribution, and as more fully set forth in Appendix D to the Disclosure Statement.

    3.2.9    **Class 11:** Equity Interest Holders. Class 11 consists of all Equity Interests in the Debtors which are all currently held by William E. Dempsey, II and Amy D. Dempsey, and they shall retain their interest. On the Effective Date, the Exempt Assets shall be transferred from the bankruptcy estate to William E. Dempsey, II and Amy D. Dempsey free and clear of all claims against the bankruptcy estate.

   **3.3    Allowed Claims.**

Notwithstanding any provision herein to the contrary, the Debtors shall make distributions only to holders of Allowed Claims. No holder of a Disputed Claim shall receive any distribution on account thereof until and to the extent that its Disputed Claim becomes an Allowed Claim. The presence of a Disputed Claim in any Class shall not be a cause to delay distribution to Allowed Claims in that Class. Any holder of a Disputed Claim that becomes an Allowed Claim after the Distribution Date shall not receive its distribution, except as otherwise expressly provided in this Plan, and except as set forth in Article VIII of this Plan.

### 3.4    Accrual of Post-Petition Interest.

In accordance with section 502(b)(2) of the Bankruptcy Code, the amount of all claims against the Debtors shall be calculated as of the Petition Date. Except as otherwise provided elsewhere in this Plan or in an order of the Bankruptcy Court, no holder of an Allowed Claim shall be entitled to the accrual of post-petition interest or the payment by Debtor of post-petition interest on account of such Allowed Claim for any purpose. Notwithstanding the foregoing, holders of Allowed Claims that are secured claims shall be entitled to post-petition interest to the extent provided for in Bankruptcy Code section 506(b).

## ARTICLE IV.
## TREATMENT OF EXECUTORY CONTRACTS
## AND UNEXPIRED LEASES

### 4.1    Assumed Contracts and Leases.

Except as otherwise provided in this Plan, or in any contract, instrument, release, or other agreement or document entered into in connection with this Plan, as of the Effective Date, Debtor shall be deemed to have been rejected except for the following:

N/A

### 4.2    Claims Based on Rejection of Executory Contracts or Unexpired Leases.

If the rejection by Debtors, pursuant to this Plan or otherwise, of an executory contract or unexpired lease results in a claim for damages, then such claim shall be forever barred and shall not be enforceable against the bankruptcy estate, unless a proof of claim is filed with the clerk of the Bankruptcy Court and served on counsel for Debtors within the earlier of thirty (30) days after service of the earlier of (i) notice entry of the Confirmation Order or (ii) other notice that the tract or unexpired lease has been rejected.

## ARTICLE V.
## MEANS FOR IMPLEMENTATION OF THE PLAN

### 5.1    Cash Disbursements

#### 5.1.1    Payment of Administrative Expenses and Professional Fees.

All Administrative Expenses and Professional Fees shall be paid, upon Court approval, pursuant to the terms and conditions contained in Articles 14.1.1 and 14.1.2.

### 5.2    Distributions from Wages

#### 5.2.1 Plan Term

For a period of five (5) years from the Confirmation Date, the Debtor shall dedicate all projected net disposable income as is necessary to implement the Plan.

#### 5.2.2 Sales of Estate Assets

DIP may sell, at its option, estate assets at its discretion subject to any applicable liens.

**5.3      Recovery of Prepetition Preference Payments**

The Debtors have identified various preference payments which are subject to avoidance. Such sums recovered shall be paid into the Plan. To the extent litigation is required to recover such payments, the attorney's fees and costs for litigation shall be paid from the funds recovered prior to any distribution to creditors.

**5.4 Avoidance Actions and Other Litigation**

5.4.1    The ICCU Amended Trust Deed.

Prepetition, ICCU recorded an amended deed of trust against the Debtors' primary residence located at 1720 E. Sendero Ln, Boise, ID 837012, but failed to obtain the Debtors' signatures on the amendment. The amendment corrected the legal description. The Debtors agree that the corrected deed reflects the intent of the parties. The Estate's appraiser analyzed the value of the real property securing the ICCU deed of trust if the amended deed were avoided and found that ICCU would still be fully secured under the original deed. Moreover, ICCU would countersue the Debtors for breach of express terms and breach of implied covenant of good faith and fair dealing if the Estate sued for avoidance of the amended deed of trust. Accordingly, the Estate will not seek to avoid the amended deed because (1) ICCU would still be fully secured, and (2) such suit would subject the Debtors to liabilities which could be mutually offset and net the Estate nothing. Instead, within 30 days after the Effective Date, the Debtors and ICCU will execute and record a corrected deed and any other necessary associated documents to resolve the erroneous recording. See Disclosure Statement for a detailed analysis of this issue.

5.4.2    The potential claims against third party Architects and Engineers.

The Estate hired Petersen Moss Hall & Olsen ("Special Counsel") to analyze whether there are claims against the third-party Architects and Engineers relating to the landslide that resulted in the BrunoBuilt v. Dempsey Case that would be feasible for the Estate to pursue at this time. The Debtors already decided prepetition not to pursue any claims and they instructed their counsel, Davison, Copple, Copple & Copple, LLP, not to do so because they did not wish to expend any more financial resources in litigation, and did not have the emotional capacity to continue.

It is a concern to the Estate that the cost of experts might not be feasible for the Estate to pay, considering the potential recovery. To the extent that Special Counsel determines such litigation would be worth pursuing, the Estate will pursue it under the terms of the retainer agreement with Special Counsel, and any funds recovered will be paid into the Estate after attorneys' fees and any other allowed costs. See Disclosure Statement for a detailed analysis of this issue.

5.4.3    Allegations of malpractice against Davison, Copple, Copple & Copple, LLP.

The Estate has analyzed the claims alleged by BrunoBuilt, Inc. against Davison, Copple, Copple & Copple, LLP and have determined they have no merit. Accordingly, the Estate will not file a malpractice action against Davison, Copple, Copple & Copple, LLP. See Disclosure Statement for a detailed analysis of this issue.

**Post-Effective Date Assets.**

All Post-Effective Date Assets shall be retained by the Debtors except as set forth herein.

### 5.5 Exemption from Certain Transfer Taxes.

Pursuant to section 1146(c) of the Bankruptcy Code, the issuance, transfer or exchange of a security, or the making or delivery of an instrument of transfer from Debtor to any other Person or entity pursuant to a sale or transfer authorized by this Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax or other similar tax or governmental assessment, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

### 5.6 Transaction on Business Days.

If the date on which a transaction may occur under this Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

### 5.7    Implementation.

Pursuant to the Confirmation Order and upon Confirmation of this Plan, the Debtors shall be authorized to take all necessary steps, and perform all necessary acts, to consummate the terms and conditions of this Plan, in accordance with its terms. On or before the Effective Date, Debtors may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate or further evidence the terms and conditions of this Plan and the other agreements referred to herein. Debtors shall execute such documents and take such other actions as necessary to effectuate the transactions provided for in this Plan, without the need for any additional approvals, lien releases, authorizations or consents.

## ARTICLE VI.
## ACCEPTANCE OR REJECTION OF THE PLAN

### 6.1    Classes Entitled to Vote.

Each impaired Class of claims under this Plan is entitled to vote to accept or reject this Plan, except as may be set forth herein. By operation of law, each unimpaired Class of claims, if any, is deemed to have accepted this Plan and, therefore, is not entitled to vote.

### 6.2    Acceptance by Impaired Classes.

An impaired Class of claims shall have accepted this Plan if (i) the holders of at least two-thirds in amount of the Allowed Claims actually voting in the Class have voted to accept this Plan and

(ii) the holders of more than one-half in number of the Allowed Claims actually voting in the Class have voted to accept this Plan, in each case not counting the vote of any holder designated under section 1126(e) of the Bankruptcy Code.

### 6.3    Elimination of Classes.

Any Class that does not contain, as of the date of the commencement of the Confirmation Hearing, any Allowed Claims or Interests or any claims temporarily allowed for voting purposes under Fed. R. Bankr. P. 3018 shall be deemed to have been deleted from this Plan for purposes of (i) voting to accept or reject this Plan and (ii) determining whether it has accepted or rejected this Plan under section 1129(a)(8) of the Bankruptcy Code.

### 6.4    Cramdown.

If, and to the extent, necessary to confirm this Plan notwithstanding the deemed rejection of this Plan by any Class, the Debtors shall request confirmation of this Plan, as it relates to such Classes and as it may be modified from time to time, under section 1129(b) of the Bankruptcy Code. The Debtors reserve the right to modify this Plan to the extent, if any, that confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification.

## ARTICLE VII.
## PROVISIONS GOVERNING DISTRIBUTIONS

### 7.1    Time of Distribution for Claims.

The above referenced distributions shall be made within the forty-five (45) days of the payment due days designated herein.

### 7.2    Allocation of Consideration.

The aggregate consideration to be distributed to the holders of Allowed Claims in each Class of claims under this Plan shall be treated first, as satisfying the stated principal amount of each holder's Allowed Claim and second, to the extent of any remaining consideration, as satisfying accrued but unpaid interest, if any. The preceding sentence does not apply to the Idaho State Tax Commission which shall apply any payments in accordance with its administrative rules.

### 7.3    Means of Cash Payment.

Cash payments under this Plan shall be in U.S. funds, and shall be made, at the option, and in the sole discretion, of the Debtors, by (i) checks drawn on or (ii) wire transfers from a domestic bank selected by the Debtors. Cash payments to foreign creditors, if any, may be made, at the option, and in the sole discretion, of the Debtors, in such funds and by such means as are necessary or customary in a particular foreign jurisdiction. Cash payments made pursuant to this Plan in the form of checks issued by the Debtors shall be null and void if not cashed within sixty (60) days of the date of the issuance thereof.

**7.4    Fractional Dollars; *De Minimis* Distributions.**

Any other provision of this Plan notwithstanding, payments of fractions of dollars shall not be made. Whenever any payment of a fraction of a dollar under this Plan would otherwise be called for, the actual payment made shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars being rounded down. The Debtors shall not make any payment of less than $100.00 with respect to any claim unless a request therefore is made in writing to the Debtors.

**7.5    Delivery of Distributions; Undeliverable or Unclaimed Distributions;  No Requirement to Surrender Certificates.**

Distributions to holders of Allowed Claims shall be made by the Debtors (i) at the holder's last known address, (ii) at the address in any written notice of address change delivered to the Debtors, or (iii) at the address shown in a duly filed Notice of Transfer under Bankruptcy Rule 3001. If any holder's distribution is returned as undeliverable, is unclaimed or such holder fails to cash a check within ninety (90) days of its issuance, such distribution shall be deposited with the Bankruptcy Court as unclaimed funds.

**7.6    Withholding and Reporting Requirements.**

In connection with this Plan and all distributions hereunder, the Debtors shall, to the extent applicable, comply with all tax withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority, and all distributions hereunder shall be subject to any such withholding and reporting requirements. The Debtors shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements.

**7.7    Set Offs.**

The Debtors may, but shall not be required to, set off against any claim the payments or other distributions to be made pursuant to this Plan in respect of such claim, claims, or Causes of Action of any nature whatsoever that Debtors may have against the claim's holder; provided, however, that neither the failure to do so nor the allowance of any claim hereunder shall constitute a waiver or release by Debtors of a Cause of Action that Debtors may have against such holder.

## ARTICLE VIII.
## PROCEDURES FOR RESOLVING DISPUTED,
## CONTINGENT, AND UNLIQUIDATED CLAIMS

**8.1    Objections to Claims; Disputed Claims**

No later than as soon as practicable after the Effective Date, the Debtors shall file objections, if any, to proofs of claim with the Bankruptcy Court. Notwithstanding any provision of this Plan to the contrary, the Debtors shall have the right and standing to process and bring on for final hearing claims objections filed during the term of the Plan.

**8.2     No Distribution Pending Allowance.**

Notwithstanding any other provision hereof, if any portion of a claim is a Disputed Claim, no payment or distribution provided hereunder shall be made on account of such claim unless and until such Disputed Claim becomes an Allowed Claim. Pending the Court determination on disallowance, the Debtors shall reserve any portion of plan distributions otherwise attributable to such disputed claim if it were allowed.  Within thirty (30) days after the date that the order or judgment of the Bankruptcy Court or other applicable court of competent jurisdiction allowing any Disputed Claim becomes a Final Order,  such  formerly Disputed Claim will receive the portion of reserved plan payments held by the Debtors attributable to such claim.

**8.3     Estimation of Claims; Distribution Reserve.**

      8.3.1   Estimation of Claims.

Debtors may, at any time, request that the Bankruptcy Court estimate any contingent or unliquidated claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether Debtors have previously objected to such claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any claim at any time during litigation concerning any objection to any claim, including during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent or unliquidated claim, that estimated amount will constitute either the allowed amount of such claim or a maximum limitation on such claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such claim, Debtors may elect to pursue any supplemental proceedings to object to any ultimate payment on such claim. All of the aforementioned claims and objection, estimation and resolution procedures are cumulative and not necessarily exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

**8.4     Distribution After Allowance/Disallowance.**

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, all future distributions shall be made to the holder of such Allowed Claim in accordance with the provisions of this Plan. Within thirty (30) days after the date that the order or judgment of the Bankruptcy Court or other applicable court of competent jurisdiction allowing any Disputed Claim becomes a Final Order, the Debtors shall provide to the holder of such claim the future distributions to which such holder is entitled under this Plan. To the extent that any Disputed Claim is ultimately disallowed the monies reserved by the Debtors pending final determination as to the allowance/disallowance of such disallowed claim shall be distributed as a part of the next annual disbursement required under this Plan.

## ARTICLE IX.
## CONDITIONS PRECEDENT TO CONFIRMATION AND
## CONSUMMATION OF THE PLAN

**9.1     Conditions to Effective Date.**

The following are conditions precedent to the occurrence of the Effective Date that must be (i) satisfied or (ii) waived in accordance with Article 9.2 below:

       9.1.1   The Confirmation Date shall have occurred and the Confirmation Order confirming this Plan, as the same may have been modified, supplemented or amended, shall have been entered by the Bankruptcy Court.

       9.1.2   The Confirmation Order shall have become a Final Order.

**9.2     Waiver of Conditions.**

The condition set forth in Article 9.1 above may be waived in whole or in part by the Debtors, without any notice to parties in interest or the Bankruptcy Court and without a hearing. The failure to satisfy or waive any condition to the Effective Date may be asserted by the Debtors regardless of the circumstances giving rise to the failure of such condition to be satisfied (including any action or inaction by the Debtors). The failure of the Debtors to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right that may be asserted at any time.

## ARTICLE X.
## MODIFICATIONS AND AMENDMENTS

The Debtors may alter, amend or modify this Plan or any exhibits thereto under section 1127(a) of the Bankruptcy Code at any time prior to the Confirmation Date and may include any such amended exhibits in this Plan or the Plan Supplement. After the Confirmation Date and prior to substantial consummation of this Plan, as defined in section 1101(2) of the Bankruptcy Code, the Debtors may, under section 1127(b) of the Bankruptcy Code, institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in this Plan, the Disclosure Statement, or the Confirmation Order, and such matters as may be necessary to carry out the purposes and effects of this Plan so long as such proceedings do not materially adversely affect the treatment of holders of claims or Interests under this Plan; provided, however, that prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or order of the Bankruptcy Court.

## ARTICLE XI.
## RETENTION OF JURISDICTION

Under sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding entry of the Confirmation Order and occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, and related to, Debtors' Chapter 11 case and this Plan to the fullest extent permitted by law, including, by way of illustration and not limitation, jurisdiction to:

    (a)     Allow, disallow, determine, liquidate, classify, estimate or establish the priority, nature, validity or amount of any claim or Interest, including, but not limited to, the resolution of any request for payment of any administrative claim, the resolution of any objections to the

allowance or priority of claims, and the resolution of any adversary proceeding or contested matter to subordinate any claim or Interest under section 510 of the Bankruptcy Code or otherwise;

(b)     Hear and determine all applications for compensation and reimbursement of expenses of professionals under this Plan or under sections 330, 331, 503(b), 1103 and 1129(a)(4) of the Bankruptcy Code;

(c)     Hear and determine all applications for compensation and reimbursement of expenses by the Debtor's professionals as described by this Plan.

(d)     Hear and determine all matters with respect to the assumption or rejection of any executory contract or unexpired lease to which a Debtors are a party or with respect to which a Debtors may be liable, including, if necessary, the nature or amount of any required cure or the allowance of any claims arising therefrom;

(e)     Effectuate performance of and payments under the provisions of this Plan;

(f)     Hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters arising out of, under, or related to, Debtors' Chapter 11 case, including, but not limited to, any Avoidance Actions;

(g)     Hear and determine any and all motions to subordinate claims or Interests at any time and on any basis permitted by applicable bankruptcy or non-bankruptcy law;

(h)     Enter such orders as may be necessary or appropriate to execute, implement or consummate the provisions of this Plan and all contracts, instruments, releases and other agreements or documents created in connection with this Plan, the Disclosure Statement or the Confirmation Order;

(i)     Hear and determine disputes arising in connection with the interpretation, implementation, consummation or enforcement of this Plan, including disputes arising under agreements, documents or instruments executed in connection with this Plan;

(j)     Consider any modifications of this Plan, cure any defect or omission or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(k)     Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any entity with implementation, consummation or enforcement of this Plan or the Confirmation Order;

(l)     Enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified or vacated;

(m)     Hear and determine any matters arising in connection with or relating to this Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release or other agreement or document created in connection with this Plan, the Disclosure Statement or the Confirmation Order;

(n)     Enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Debtor's Chapter 11 case;

(o)     Recover all assets of Debtor and property of Debtors' estate, wherever located;

(p)     Hear and determine matters concerning state, local and federal taxes in accordance

with sections 346, 505 and 1146 of the Bankruptcy Code;

(q)     Hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code; and

(r)     Enter a final decree closing Debtors' Chapter 11 case.

# ARTICLE XII.
# EFFECTS OF CONFIRMATION

### 12.1 Discharge.

Notwithstanding any other provision in this Plan, no post-petition tax liability is discharged, including but not limited to taxes relating to periods for which tax returns are not yet due. Debtors are liable for, and shall pay, all post-petition taxes. The rights afforded in this Plan shall be in exchange for and in complete satisfaction and release of all claims and Interests of any nature against Debtors or Debtors' properties, both prior to, from and after, the commencement of this Chapter 11 case through the Confirmation Date; and, except as otherwise provided in this Plan, the Completion of the Plan Payments hereunder acts as a discharge effective as of the Effective Date of the Plan, of (i) any and all claims arising or occurring prior to the Effective Date, and (ii) any and all claims of the kind specified in §§ 502(g), 502(h), or 502(i) of the Code. Such discharge will be effective under §1141 of the Code whether or not a Proof of Claim is filed or deemed filed, such claim is allowed, or the holder of such claim has accepted the Plan. Further, confirmation of the plan terminates all rights and interests of pre-petition equity security holders as set forth in the Plan.

### 12.2 Binding Effect.

This Plan shall be binding on and inure to the benefit of Debtors, all current and former holders of claims against and Interests in Debtors and their respective successors and assigns, and all other parties-in-interest in Debtors' Chapter 11 case.

### 12.3 Authorization of Further Action.

The entry of the Confirmation Order shall constitute a direction to and authorization for the Debtors to take or cause to be taken any action necessary or appropriate to consummate the transactions contemplated by this Plan and any related documents or agreements prior to and through the Effective Date, and all such actions taken or caused to be taken in accordance with the provisions of this Plan shall be deemed to have been authorized and approved by the Bankruptcy Code without the need for any additional authorizations, approvals or consents.

### 12.4 *Reserved.*
### 12.5 Injunction.

All parties shall be enjoined from taking action against the Debtors to the maximum extent allowed by 11 U.S.C. § 524 and 11 U.S.C. § 1141.

**12.6**  *Reserved.*

# ARTICLE XIII.
## COMPROMISES AND SETTLEMENTS

Pursuant to section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019(a), and except as provided by Article 5.1 and Article 5.2, the Debtors may compromise and settle various claims against claimants, creditors or other Persons, in accordance with the provisions of this Plan. Debtors expressly reserve the right (with Bankruptcy Court approval, following appropriate notice and opportunity for a hearing) to compromise and settle claims against it and claims that it may have against other Persons.

# ARTICLE XIV.
## MISCELLANEOUS PROVISIONS

### 14.1  Bar Dates for Certain Claims.

14.1.1  Administrative Claims.

The Confirmation Order shall establish the "Administrative Claims Bar Date" for filing administrative claims (other than (i) claims previously allowed by the Bankruptcy Court, (ii) the claims of professionals employed in the cases ("Professional Fee Claims") and (iii) other claims for reimbursement), which date shall be thirty (30) days after the Confirmation Date. Holders of asserted administrative claims that are required to file and serve a request for payment of such administrative claims and whose claims were not paid prior to the Confirmation Date, except for Professional Fee Claims or United States Trustee fees, shall submit requests for payment of administrative expenses on or before such Administrative Claims Bar Date or forever be barred from doing so. The notice of entry of the Confirmation Order to be delivered pursuant to Fed. R. Bankr. P. 3020(c) and 2002(f) shall set forth such date and constitute notice of the Administrative Claims Bar Date. Notwithstanding anything to the contrary herein, the filing of an Administrative Claim shall not be required to receive payment for any tax liability described in sections 503(b)(1)(B) and (C) in accordance with section 503(b)(1)(D) of the Bankruptcy Code. The Debtors shall have sixty (60) days (or such longer period as may be allowed by order of the Bankruptcy Court) following the Administrative Claims Bar Date to review and object to such administrative claims before a hearing for determination of allowance of such administrative claims.

14.1.2 Professional Fee Claims; Substantial Contribution.

All final requests for compensation or reimbursement of expenses pursuant to sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code for services rendered to Debtors prior to the Confirmation Date (including requests under section 503(b)(4) of the Bankruptcy Code by any professional or other entity for making a substantial contribution in Debtors' Chapter 11 case) shall be filed and served on Debtors and their counsel, and the Office of the United States Trustee, as well as those parties filing notices of appearance in these cases or otherwise requesting notice of such application,  no later than thirty (30) days after the Effective Date, unless otherwise ordered by the Bankruptcy Court. Objections to  applications of  such professionals or other entities for compensation or reimbursement of expenses shall be filed and served on Debtors and their

counsel, the Office of the United States Trustee, and the requesting professional or other entity within the time allotted by the Bankruptcy Rules.

**14.2    Payment of Statutory Fees.**

All fees payable under section 1930 of title 28 of the United States Code shall be paid on or before the Effective Date. [Trustee Quarterly Fees]

**14.3    Severability of Plan Provisions.**

If, prior to entry of the Confirmation Order, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as so altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**14.4    Successors and Assigns.**

The rights, benefits and obligations of any Person named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of that Person.

**14.5    Term of Injunctions or Stays.**

All injunctions or stays contained in this Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

**14.6    Revocation, Withdrawal or Non-Consummation.**

Debtors reserve the right to revoke or withdraw this Plan at any time prior to the Confirmation Date and to file other Plans of reorganization. If Debtors revoke or withdraw this Plan or if Confirmation does not occur, or if the Confirmation Order is vacated, then (i) this Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in this Plan (including the fixing or limiting to an amount any claim or Interest or Class of claims or Interests), assumption or rejection of executory contracts or leases effected by this Plan, and any document or agreement executed pursuant to this Plan shall be deemed null and void, and (iii) nothing contained in this Plan, and no acts taken in preparation for consummation of this Plan, shall (a) constitute a waiver or release of any claims by or against, or any Interests in, Debtors or any other Person; (b) prejudice in any manner the admission of any sort by Debtors or any other Person.

**14.7** *Reserved*

**14.8 Prepayment.**

The Debtors shall have the right to prepay any or all of the claims hereinabove set forth, without penalty. No notice of prepayment shall be required. In the event Debtors prepay any secured claim, or any portion thereof, the remaining balance of such secured claim shall be re-amortized for the term specific to such secured claim and the annual payment amount adjusted accordingly.

**14.9 Notices to Debtors.**

Any notice, request or demand required or permitted to be made or provided to or on Debtors under this Plan shall be (i) in writing, (ii) served by (a) certified mail, return receipt requested; (b) hand delivery; (c) overnight delivery service; (d) first class mail; or (e) facsimile transmission, and (iii) deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

| | |
|---|---|
| Debtors: | William E. Dempsey, II |
| | Amy D. Dempsey |
| | 1720 E. Sendero Ln. |
| | Boise, ID 83712 |
| | |
| Attorney for Debtors: | Holly Roark |
| | Roark Law Offices |
| | 950 Bannock St. Ste. 1100 |
| | Boise, ID 83702 |

Or at such other address that Debtors may designate in writing in a Notice of Change of Address filed with the Court or served upon creditor(s).

**14.10  Governing Law.**

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the state of Idaho shall govern the construction and implementation of this Plan and any agreements, documents, and instruments reinstated or executed in connection with this Plan.

## ARTICLE XV
## DEFAULT ON TAX OBLIGATIONS

**15.1.   Default on Tax Obligations.**

Debtors do not owe taxes to the Idaho State Tax Commission but include this section for the benefit of the ISTC in the event they assert a liability.

If the Debtors fail to make any deposit of any currently accruing tax liability or fails to make payment of any tax or of any payment due under the Plan to the Idaho State Tax Commission within 30 days of the due date of such deposit or payment, or fails to file any required Idaho tax return within thirty (30) days of the due date of such return, then the Idaho State Tax Commission may send a written Notice of Default to the Debtor and its counsel of record. Failure to send a

Notice of Default does not constitute a waiver by the Idaho State Tax Commission of the right to declare that the Debtors are in default. If the Idaho State Tax Commission declares the Debtors to be in default, and such default is valid and uncured for a period of fourteen (14) days after receipt of the Notice of Default, then the entire amount in default, together with any current unpaid current liabilities, shall become due and payable immediately upon written demand to the Debtors. If the default is not cured within fourteen (14) days of such written demand, or other arrangement agreed in writing, then the Idaho State Tax Commission may collect any unpaid liabilities through the administrative collection provisions of the appropriate tax code and the injunction under the Plan shall be lifted for this purpose without further order of the Court. The Debtors or its successor shall be liable for such unpaid liabilities as if no bankruptcy had occurred. Nothing contained herein shall preclude or limit the right of the Debtors to contest such default in good faith.


DATED: August 3  , 2020



DEBTORS-IN-POSSESSION

William E. Dempsey, II


Amy D. Dempsey



ROARK LAW OFFICES


Holly Roark, *Counsel for
Debtors-in-possession*

# EXHIBIT A

1  JESSE A.P. BAKER (SBN 8411)
    LESLEY D. BOHLEBER (SBN 10477)
2  **ALDRIDGE | PITE, LLP**
    4375 Jutland Drive, Suite 200
3  P.O. Box 17933
    San Diego, CA 92177-0933
4  Telephone: (858) 750-7600
    Facsimile: (619) 590-1385

5

6  Attorneys for: Bank of America, N.A. (N.C.)

7

8

9             **UNITED STATES BANKRUPTCY COURT**

10           **DISTRICT OF IDAHO – BOISE DIVISION**

| | |
|---|---|
| In re | Case No. 19-01069-JMM |
| WILLIAM E. DEMPSEY II, and AMY D. DEMPSEY. | Chapter 11 |
| Debtors and Debtors In Possession. | **STIPULATION RE: TREATMENT OF CLAIM UNDER CHAPTER 11 PLAN** |
| | <u>**Collateral:**</u><br>2012 BMW X5<br>VIN: 5UXZV4C54CL759159 |

17       This Stipulation Re: Treatment of Claim for Debtors' Chapter 11 Plan ("<u>Stipulation</u>") is

18  entered into by and between the Secured Creditor, Bank of America, N.A. (hereinafter "<u>BANA</u>"),

19  and Debtors, William E. Dempsey II, and Amy D. Dempsey (hereinafter "<u>Debtors</u>") by and through

20  their respective attorneys of record.

21  **THE CLAIM**:

22       On January 14, 2019, Debtor, William E. Dempsey executed a Retail Installments Sale

23  Contract in the principal sum of $14,230.82 (the "<u>Agreement</u>"), which was made payable to Creditor

24  and secured by a Lien a motor vehicle commonly known as a 2012 BMW X5, VIN No.

25  5UXZV4C54CL759159 (the "<u>Vehicle</u>") . (*See, Proof of Claim No.11*).

26  **DEBTORS' BANKRUPTCY CASE**

27       On September 17, 2019, Debtors filed a voluntary bankruptcy petition under Chapter 11 of

28  the Bankruptcy Code in the United States Bankruptcy Court for the District of Idaho-Boise Division,

<u>EXHIBIT A</u>

and were assigned case number 19-01069-JMM (*See, Dkt. No.1*).

BANA filed a Proof of Claim against the Debtors' Bankruptcy Estate in the amount of $11,995.50, secured by the Vehicle with pre-petition arrears in the amount of $0.00.  (*See, Claim No.11*).

On May 18, 2020, Debtors and BANA executed and filed a Stipulation Re: Adequate Protection that was approved by Order of the Court ("<u>APO</u>").  (*See, Dkt Nos.152,153,197*.).

**THE PARTIES STIPULATE AS FOLLOWS**:

1.    <u>Secured Claim</u>.  BANA (its successors or assigns) shall have a fully secured claim in the amount of $10,133.20 to be amortized over 60 months at a fixed rate of 4.63% per annum (the "<u>Secured Claim</u>").

2.    <u>Payments on the Secured Claim</u>.   Payments on the Secured Claim in the amount of $189.51 shall commence on August 1, 2020, and continue on the first day of each month thereafter for a period of 59 months at which time any outstanding amounts must be paid in full.  Debtors acknowledges the payments hereunder shall be deemed adequate protection payments until Debtors' Chapter 11 Plan is confirmed, at which time all said payments made hereunder shall be credited against the Secured Claim herein as of August 1, 2020.

3.    <u>Insurance</u>.  Debtors agree to provide BANA with a copy of the insurance for the Vehicle within 3 business days of executing this Stipulation, and upon BANA's reasonable request to ensure compliance herewith.  In the event Debtors fail to maintain insurance on the Vehicle, BANA reserves its rights under the Loan documents to disburse any such amounts as may be necessary to provide for insurance for the Vehicle and thereafter require Debtor to tender monthly escrow payments to reimburse BANA for any and all insurance advances made by BANA for the Vehicle.

4.    In the event the Debtors seek to sell the Vehicle at any time prior to confirming their Chapter 11 Plan, or if Debtors seek to sell the Vehicle through their Chapter 11 Plan, BANA shall be entitled to credit bid at any such sale in an amount not less than the full pre-confirmation unmodified, original outstanding balance owing under the terms of the Loan and/or exercise any of its rights pursuant to 11 U.S.C. §§ 363(b), (f), (k) or 1129(b)(2)(A)(ii) as applicable, and shall be

1  permitted to receive proceeds from the sale of the Vehicle in an amount not less than the full pre-

2  confirmation unmodified, original outstanding balance owing under the terms of the Loan at said

3  time, less payments received to such date.

4        5.    <u>Pre-Confirmation Default</u>.    In the event of any future default on any of the

5  above-described provisions, BANA shall provide written notice to Debtors and Debtors' attorney of

6  record indicating the nature of the default.  If Debtors fail to cure the default with certified funds

7  within the passage of twenty one (21) calendar days from the date said written notice is placed in the

8  mail, then BANA may file an Ex Parte Declaration of Non-Cure and an Order Terminating the

9  Automatic Stay with the Court. Upon entry of said Order Terminating the Automatic Stay, the

10 automatic stay shall be immediately terminated as to BANA, and BANA may proceed repossess and

11 sell the Vehicle under the terms of the Agreement and pursuant to applicable state law, without

12 further order or proceeding of this Court.  Further, the parties agree in the event that BANA is

13 granted relief from the automatic stay, the parties hereby stipulate that the 14-day stay provided by

14 Bankruptcy Rule 4001(a)(3) is waived.

15       6.    <u>Post-Confirmation Default</u>.  Upon confirmation of Debtors' Chapter 11 Plan, the

16 Automatic Stay shall be deemed terminated in all respects as to BANA with respect to the Vehicle,

17 and BANA will provide Debtors notice of any default related to this Stipulation in accordance with

18 the Agreement, and applicable state law and/or proceed with its remedies under the terms of the

19 Agreement and applicable state law, including but not limited to repossession and sale of the

20 Vehicle, without further notice, order, or proceeding of this Court.

21       7.    Except as otherwise expressly provided herein, all remaining terms of the Agreement,

22 which is incorporated herein by this reference, shall govern the treatment of BANA's Secured Claim.

23       8.    In the event the Debtors' case is dismissed or converted to any other chapter under

24 Title 11 of the United States Bankruptcy Code, BANA shall retain its lien in the full, unmodified

25 pre-confirmation amount due under the Loan, less any payments received to such date.

26       9.    Debtors shall attach a copy of this Stipulation to any Chapter 11 Plan filed in this case

27 as an exhibit, including any amendments or modifications thereto, and said Plan shall expressly and

28 fully incorporate the terms and provisions of this Stipulation into Debtors' Chapter 11 Plan by

1   reference (including any amended or modified Chapter 11 Plan). In the event of a conflict between a

2   provision of Debtors' Plan as to the treatment of BANA's claim and the Stipulation, the Stipulation

3   shall control. Further, the terms and provisions of this Stipulation may not be modified, altered, or

4   changed by any Chapter 11 Plan, including any subsequently filed amended or modified Chapter 11

5   Plan of Reorganization and/or confirmation order on the foregoing without the express written

6   consent of BANA.

7         10.    In the event the Debtors assert that BANA has failed to properly update its internal

8   system to comply with the terms of this Stipulation within a reasonable period of time after an order

9   is entered confirming the Debtors' Chapter 11 Plan of Reorganization, which shall be not less than

10  ninety (90) days, the Debtors shall be required to provide written notice of the alleged lack of

11  compliance to BANA and BANA's counsel of record, Aldridge Pite, LLP at 4375 Jutland Drive,

12  Suite 200, San Diego, CA 92117, indicting the nature of the alleged lack of compliance. If BANA

13  fails to either remedy the alleged lack of compliance and/or provide an explanation refuting the

14  Debtors' allegation after the passage of ninety (90) days from the date BANA receives said written

15  notice (the "Meet and Confer Period"), Debtors may proceed with filing the appropriate motion in

16  bankruptcy court seeking BANA's compliance.

17        11.    Any forbearance by BANA (and/or its servicer) in exercising any right or remedy,

18  including, without limitation, BANA (and/or its servicer) accepting payments from third persons,

19  entities or successors in interest to Debtors, or in amounts less than the amount due, including as

20  provided for under this Stipulation, shall not be a waiver of or preclude the BANA (and/or servicer)

21  exercise of any right or remedy, or act as a waiver of BANA's right to proceed hereunder or under

22  the Loan.

23  /././

24  /././

25  /././

26  /././

27  /././

28  /././

1        12.     In exchange for the forgoing, and provided Debtors' Chapter 11 Plan complies with

2   the provisions herein, BANA shall provide a ballot voting in favor of the Debtors' Chapter 11 Plan

3   of Reorganization for the Secured Claim.

4

5   **IT IS SO STIPULATED:**             **ALDRIDGE PITE, LLP**

6

7

8   DATED: 7/31/20             ALDRIDGE PITE, LLP

9                             By: /s/ *Lesley Bohleber*

10                            LESLEY D. BOHLEBER (SBN 10477)
JESSE A.P. BAKER (SBN 8411)

11                            Attorneys for Bank of America, N.A.

12

13                    **ROARK LAW OFFICES**

14

15   DATED: 7/30/2020             By:

16                            HOLLY ROARK
Attorney for Debtors

17                            William E. Dempsey II, and
Amy D. Dempsey

18

19

20

21

22

23

24

25

26

27

28

- 5 -                 CASE NO. 19-01069-JMM
**CLAIM TREATMENT STIPULATION**

                 <u>EXHIBIT A</u>

# EXHIBIT B

BILL AND AMY DEMPSEY
Case No 19-01069-JMM

**Proposed Plan Budget - 60 months**
**CHAPTER 11 INDIVIDUAL DEBTOR**

Plan Year 1

| | | Oct-20 | Nov-20 | Dec-20 | Jan-21 | Feb-21 | Mar-21 | Apr-21 | May-21 | Jun-21 | Jul-21 | Aug-21 | Sep-21 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Beginning Cash Balance | | 127,015.15 | 81,241.09 | 51,719.37 | 53,920.31 | 55,709.30 | 58,473.29 | 75,171.96 | 75,326.29 | 75,351.29 | 75,376.29 | 75,530.62 | 75,555.62 |
| **CASH RECEIPTS** | | | | | | | | | | | | | |
| | Net Wages | 18,768.34 | 18,768.34 | 18,768.34 | 19,331.39 | 19,331.39 | 19,331.39 | 19,331.39 | 19,331.39 | 19,331.39 | 19,331.39 | 19,331.39 | 19,331.39 |
| | Average expense reimbursements | 656.00 | 656.00 | 656.00 | 656.00 | 656.00 | 656.00 | 656.00 | 656.00 | 656.00 | 656.00 | 656.00 | 656.00 |
| TOTAL CASH RECEIPTS | | 146,439.49 | 100,665.43 | 71,143.71 | 73,907.70 | 75,696.69 | 78,460.68 | 95,159.35 | 95,313.68 | 95,338.68 | 95,363.68 | 95,518.01 | 95,543.01 |
| **CASH DISBURSEMENTS** | | | | | | | | | | | | | |
| | ICCU regular monthly mortgage payments | (3,308.74) | (3,308.74) | (3,308.74) | (3,308.74) | (3,308.74) | (3,308.74) | (3,308.74) | (3,308.74) | (3,308.74) | (3,308.74) | (3,308.74) | (3,308.74) |
| | Washington Trust Bank regular monthly LOC payments | (1,407.09) | (1,407.09) | (1,407.09) | (1,407.09) | (1,407.09) | (1,407.09) | (1,407.09) | (1,407.09) | (1,407.09) | (1,407.09) | (1,407.09) | (1,407.09) |
| | Reserve to make lump sum payment under Washington Trust Bank Note - maturity date 1/12/2023 | (4,816.00) | (4,816.00) | (4,816.00) | (4,816.00) | (4,816.00) | (4,816.00) | (4,816.00) | (4,816.00) | (4,816.00) | (4,816.00) | (4,816.00) | (4,816.00) |
| | Held in savings for WaTrust Balloon Payment | 4,816.00 | 4,816.00 | 4,816.00 | 4,816.00 | 4,816.00 | 4,816.00 | 4,816.00 | 4,816.00 | 4,816.00 | 4,816.00 | 4,816.00 | 4,816.00 |
| | Personal Living Expenses | (9,334.00) | (9,334.00) | (9,334.00) | (9,334.00) | (9,334.00) | (9,334.00) | (9,334.00) | (9,334.00) | (9,334.00) | (9,334.00) | (9,334.00) | (9,334.00) |
| | Insurance | (585.33) | (585.33) | (585.33) | (585.33) | (585.33) | (585.33) | (585.33) | (585.33) | (585.33) | (585.33) | (585.33) | (585.33) |
| | Meals and Travel for business | (656.00) | (656.00) | (656.00) | (656.00) | (656.00) | (656.00) | (656.00) | (656.00) | (656.00) | (656.00) | (656.00) | (656.00) |
| TOTAL EXPENSES | | (15,291.16) | (15,291.16) | (15,291.16) | (15,291.16) | (15,291.16) | (15,291.16) | (15,291.16) | (15,291.16) | (15,291.16) | (15,291.16) | (15,291.16) | (15,291.16) |
| **SECURED PLAN PAYMENTS** | | | | | | | | | | | | | |
| Class 3, Claim No. 11 Vehicle | Bank of America | (189.51) | (189.51) | (189.51) | (189.51) | (189.51) | (189.51) | (189.51) | (189.51) | (189.51) | (189.51) | (189.51) | (189.51) |
| Class 4, Class Line No. 9 Mortgage | Idaho Central Credit Union | (661.75) | (661.75) | (661.75) | (661.75) | (661.75) | (661.75) | (661.75) | (661.75) | (661.75) | (661.75) | (661.75) | (661.75) |
| Class 5 , Claim No. 10 Vehicle | Idaho Central Credit Union, secured portion | (193.66) | (193.66) | (193.66) | (193.66) | (193.66) | (193.66) | (193.66) | (193.66) | (193.66) | (193.66) | (193.66) | (193.66) |
| Class 6, Secured Line of Credit | Washington Trust Bank | (603.04) | (603.04) | (603.04) | (603.04) | (603.04) | (603.04) | (603.04) | (603.04) | (603.04) | (603.04) | (603.04) | (603.04) |
| Class 7, Claim Nos. 4,5,6,7,8 | Ada County Treasurer | | (7,222.66) | | | | | | | | | | |
| **TOTAL FOR SECURED** | | (1,647.96) | (8,870.62) | (1,647.96) | (1,647.96) | (1,647.96) | (1,647.96) | (1,647.96) | (1,647.96) | (1,647.96) | (1,647.96) | (1,647.96) | (1,647.96) |
| **Estimated Professional fees, subject to Court approval** | | | | | | | | | | | | | |
| Class 1, Class AC1 | Attorney - Holly Roark | (25,000.00) | (12,000.00) | | | | | | | | | | |
| Class 1, Class AC2 | Attorney - Mike Band | (20,000.00) | (9,000.00) | | | | | | | | | | |
| Class 1, Class AC3 | Attorney - Petersen Moss Hall & Olsen | | (3,500.00) | | | | | | | | | | |
| Class 1, Class AC4 | Appraiser - Jody Graham | (2,000.00) | | | | | | | | | | | |
| Class 1, Class AC5 | UST Quarterly fees | (975.00) | | | (975.00) | | | | | | | | |
| **TOTAL ADMINISTRATIVE** | | (47,975.00) | (24,500.00) | - | (975.00) | - | - | - | - | - | - | - | - |
| **UNSECURED PLAN PAYMENTS** | | | | | | | | | | | | | |
| Class 10, *subject to preference offset | Barclays Bank | (8.98) | (8.98) | (8.98) | (8.98) | (8.98) | (8.98) | (8.98) | (8.98) | (8.98) | (8.98) | (8.98) | (8.98) |
| Class 9, Claim No. 3 *disputed, subject to liquidation; payment pending liquidation of claim | BrunoBuilt, Inc. | (238.00) | (238.00) | (238.00) | (238.00) | (238.00) | (238.00) | (238.00) | (238.00) | (238.00) | (238.00) | (238.00) | (238.00) |
| Claim No. 3 *subject to preference offset | Capital One | (2.73) | (2.73) | (2.73) | (2.73) | (2.73) | (2.73) | (2.73) | (2.73) | (2.73) | (2.73) | (2.73) | (2.73) |
| Class 10 | Chase Card Member Services | (2.62) | (2.62) | (2.62) | (2.62) | (2.62) | (2.62) | (2.62) | (2.62) | (2.62) | (2.62) | (2.62) | (2.62) |
| Class 10 | Davison, Copple, Copple & Copple, LLP | (3.23) | (3.23) | (3.23) | (3.23) | (3.23) | (3.23) | (3.23) | (3.23) | (3.23) | (3.23) | (3.23) | (3.23) |
| Class 10, Claim No. 1 | Morrow & Fischer | (0.32) | (0.32) | (0.32) | (0.32) | (0.32) | (0.32) | (0.32) | (0.32) | (0.32) | (0.32) | (0.32) | (0.32) |
| Class 8, *subject to preference offset | Washington Trust Bank | (16.79) | (16.79) | (16.79) | (16.79) | (16.79) | (16.79) | (16.79) | (16.79) | (16.79) | (16.79) | (16.79) | (16.79) |
| Class 10, Claim No. 12 | Zion's Bank | (3.46) | (3.46) | (3.46) | (3.46) | (3.46) | (3.46) | (3.46) | (3.46) | (3.46) | (3.46) | (3.46) | (3.46) |
| Class 10, Claim No. 10 Vehicle | ICCU, unsecured portion of car claim | (0.29) | (0.29) | (0.29) | (0.29) | (0.29) | (0.29) | (0.29) | (0.29) | (0.29) | (0.29) | (0.29) | (0.29) |
| Class 10, *subject to preference offset | William & Bernadette Dempsey | (7.86) | (7.86) | (7.86) | (7.86) | (7.86) | (7.86) | (7.86) | (7.86) | (7.86) | (7.86) | (7.86) | (7.86) |
| **TOTAL FOR UNSECURED** | | (284.28) | (284.28) | (284.28) | (284.28) | (284.28) | (284.28) | (284.28) | (284.28) | (284.28) | (284.28) | (284.28) | (284.28) |
| Class 2 | | | | | | | | | | | | | |
| | Priority Claims | | | | | | | | | | | | |
| | None | | | | | | | | | | | | |
| | TOTAL DISBURSEMENTS | (65,198.40) | (48,946.06) | (17,223.40) | (18,198.40) | (17,223.40) | (17,223.40) | (17,223.40) | (17,223.40) | (17,223.40) | (17,223.40) | (17,223.40) | (17,223.40) |
| BEGINNING BALANCE | | 127,015.15 | 81,241.09 | 51,719.37 | 53,920.31 | 55,709.30 | 58,473.29 | 61,237.28 | 64,001.27 | 66,765.26 | 69,529.25 | 72,293.24 | 75,057.23 |
| RECEIPTS | | 19,424.34 | 19,424.34 | 19,424.34 | 19,987.39 | 19,987.39 | 19,987.39 | 19,987.39 | 19,987.39 | 19,987.39 | 19,987.39 | 19,987.39 | 19,987.39 |
| TOTAL CASH DISBURSEMENTS | | (65,198.40) | (48,946.06) | (17,223.40) | (18,198.40) | (17,223.40) | (17,223.40) | (17,223.40) | (17,223.40) | (17,223.40) | (17,223.40) | (17,223.40) | (17,223.40) |
| NET CASH FLOW | | (45,774.06) | (29,521.72) | 2,200.94 | 1,788.99 | 2,763.99 | 2,763.99 | 2,763.99 | 2,763.99 | 2,763.99 | 2,763.99 | 2,763.99 | 2,763.99 |
| ENDING BALANCE | | 81,241.09 | 51,719.37 | 53,920.31 | 55,709.30 | 58,473.29 | 61,237.28 | 64,001.27 | 66,765.26 | 69,529.25 | 72,293.24 | 75,057.23 | 77,821.22 |

EXHIBIT B

**Proposed Plan Budget - 60 months**
**CHAPTER 11 INDIVIDUAL DEBTOR**

BILL AND AMY DEMPSEY
Case No 19-01069-JMM

**Plan Year 2**

| | | Oct-21 | Nov-21 | Dec-21 | Jan-22 | Feb-22 | Mar-22 | Apr-22 | May-22 | Jun-22 | Jul-22 | Aug-22 | Sep-22 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Beginning Cash Balance | | 77,821.22 | 80,585.21 | 83,349.20 | 86,113.19 | 89,457.12 | 92,801.06 | 96,144.99 | 99,488.92 | 102,832.85 | 106,176.78 | 109,520.72 | 112,864.65 |
| **CASH RECEIPTS** | | | | | | | | | | | | | |
| | Net Wages | 19,331.39 | 19,331.39 | 19,331.39 | 19,911.33 | 19,911.33 | 19,911.33 | 19,911.33 | 19,911.33 | 19,911.33 | 19,911.33 | 19,911.33 | 19,911.33 |
| | Average expense reimbursements | 656.00 | 656.00 | 656.00 | 656.00 | 656.00 | 656.00 | 656.00 | 656.00 | 656.00 | 656.00 | 656.00 | 656.00 |
| TOTAL CASH RECEIPTS | | 97,808.61 | 100,572.60 | 103,336.59 | 106,680.52 | 110,024.46 | 113,368.39 | 116,712.32 | 120,056.25 | 123,400.18 | 126,744.12 | 130,088.05 | 133,431.98 |
| **CASH DISBURSEMENTS** | | | | | | | | | | | | | |
| | ICCU regular monthly mortgage payments | (3,308.74) | (3,308.74) | (3,308.74) | (3,308.74) | (3,308.74) | (3,308.74) | (3,308.74) | (3,308.74) | (3,308.74) | (3,308.74) | (3,308.74) | (3,308.74) |
| | Washington Trust Bank regular monthly LOC payments | (1,407.09) | (1,407.09) | (1,407.09) | (1,407.09) | (1,407.09) | (1,407.09) | (1,407.09) | (1,407.09) | (1,407.09) | (1,407.09) | (1,407.09) | (1,407.09) |
| | Reserve to make lump sum payment under Washington Trust Bank Note - maturity date 1/12/2023 | (4,816.00) | (4,816.00) | (4,816.00) | (4,816.00) | (4,816.00) | (4,816.00) | (4,816.00) | (4,816.00) | (4,816.00) | (4,816.00) | (4,816.00) | (4,816.00) |
| | Held in savings for WaTrust Balloon Payment | 4,816.00 | 4,816.00 | 4,816.00 | 4,816.00 | 4,816.00 | 4,816.00 | 4,816.00 | 4,816.00 | 4,816.00 | 4,816.00 | 4,816.00 | 4,816.00 |
| | Personal Living Expenses | (9,334.00) | (9,334.00) | (9,334.00) | (9,334.00) | (9,334.00) | (9,334.00) | (9,334.00) | (9,334.00) | (9,334.00) | (9,334.00) | (9,334.00) | (9,334.00) |
| | Insurance | (585.33) | (585.33) | (585.33) | (585.33) | (585.33) | (585.33) | (585.33) | (585.33) | (585.33) | (585.33) | (585.33) | (585.33) |
| | Meals and Travel for business | (656.00) | (656.00) | (656.00) | (656.00) | (656.00) | (656.00) | (656.00) | (656.00) | (656.00) | (656.00) | (656.00) | (656.00) |
| **TOTAL EXPENSES** | | (15,291.16) | (15,291.16) | (15,291.16) | (15,291.16) | (15,291.16) | (15,291.16) | (15,291.16) | (15,291.16) | (15,291.16) | (15,291.16) | (15,291.16) | (15,291.16) |
| **SECURED PLAN PAYMENTS** | | | | | | | | | | | | | |
| Class 3, Claim No. 11 Vehicle | Bank of America | (189.51) | (189.51) | (189.51) | (189.51) | (189.51) | (189.51) | (189.51) | (189.51) | (189.51) | (189.51) | (189.51) | (189.51) |
| Class 4, Claim No. 9 Mortgage | Idaho Central Credit Union | (661.75) | (661.75) | (661.75) | (661.75) | (661.75) | (661.75) | (661.75) | (661.75) | (661.75) | (661.75) | (661.75) | (661.75) |
| Class 5 , Claim No. 10 Vehicle | Idaho Central Credit Union, secured portion | (193.66) | (193.66) | (193.66) | (193.66) | (193.66) | (193.66) | (193.66) | (193.66) | (193.66) | (193.66) | (193.66) | (193.66) |
| Class 6, Secured Line of Credit | Washington Trust Bank | (603.04) | (603.04) | (603.04) | (603.04) | (603.04) | (603.04) | (603.04) | (603.04) | (603.04) | (603.04) | (603.04) | (603.04) |
| Class 7, Claim Nos. 4,5,6,7,8 | Ada County Treasurer | | | | | | | | | | | | |
| **TOTAL FOR SECURED** | | (1,647.96) | (1,647.96) | (1,647.96) | (1,647.96) | (1,647.96) | (1,647.96) | (1,647.96) | (1,647.96) | (1,647.96) | (1,647.96) | (1,647.96) | (1,647.96) |
| **Estimated Professional fees, subject to Court approval** | | | | | | | | | | | | | |
| Class 1, Class AC1 | Attorney - Holly Roark | - | - | - | - | - | - | - | - | - | - | - | - |
| Class 1, Class AC2 | Attorney - Mike Band | - | - | - | - | - | - | - | - | - | - | - | - |
| Class 1, Class AC3 | Attorney - Petersen Moss Hall & Olsen | - | - | - | - | - | - | - | - | - | - | - | - |
| Class 1, Class AC4 | Appraiser - Jody Graham | - | - | - | - | - | - | - | - | - | - | - | - |
| Class 1, Class AC5 | UST Quarterly fees | - | - | - | - | - | - | - | - | - | - | - | - |
| **TOTAL ADMINISTRATIVE** | | - | - | - | - | - | - | - | - | - | - | - | - |
| **UNSECURED PLAN PAYMENTS** | **Unsecured debt payments** | | | | | | | | | | | | |
| Class 10, *subject to preference offset | Barclays Bank | (8.98) | (8.98) | (8.98) | (8.98) | (8.98) | (8.98) | (8.98) | (8.98) | (8.98) | (8.98) | (8.98) | (8.98) |
| Class 9, Claim No. 2 - *disputed, subject to liquidation; payment pending liquidation of claim | BrunoBuilt, Inc. | (238.00) | (238.00) | (238.00) | (238.00) | (238.00) | (238.00) | (238.00) | (238.00) | (238.00) | (238.00) | (238.00) | (238.00) |
| Claim No. 3 *subject to preference offset | Capital One | (2.73) | (2.73) | (2.73) | (2.73) | (2.73) | (2.73) | (2.73) | (2.73) | (2.73) | (2.73) | (2.73) | (2.73) |
| Class 10 | Chase Card Member Services | (2.62) | (2.62) | (2.62) | (2.62) | (2.62) | (2.62) | (2.62) | (2.62) | (2.62) | (2.62) | (2.62) | (2.62) |
| Class 10 | Davison, Copple, Copple & Copple, LLP | (3.23) | (3.23) | (3.23) | (3.23) | (3.23) | (3.23) | (3.23) | (3.23) | (3.23) | (3.23) | (3.23) | (3.23) |
| Class 10, Claim No. 1 | Morrow & Fischer | (0.32) | (0.32) | (0.32) | (0.32) | (0.32) | (0.32) | (0.32) | (0.32) | (0.32) | (0.32) | (0.32) | (0.32) |
| Class 8, *subject to preference offset | Washington Trust Bank | (16.79) | (16.79) | (16.79) | (16.79) | (16.79) | (16.79) | (16.79) | (16.79) | (16.79) | (16.79) | (16.79) | (16.79) |
| Class 10, Claim No. 12 | Zion's Bank | (3.46) | (3.46) | (3.46) | (3.46) | (3.46) | (3.46) | (3.46) | (3.46) | (3.46) | (3.46) | (3.46) | (3.46) |
| Class 10, Claim No. 10 Vehicle | ICCU, unsecured portion of car claim | (0.29) | (0.29) | (0.29) | (0.29) | (0.29) | (0.29) | (0.29) | (0.29) | (0.29) | (0.29) | (0.29) | (0.29) |
| Class 10, *subject to preference offset | William & Bernadette Dempsey | (7.86) | (7.86) | (7.86) | (7.86) | (7.86) | (7.86) | (7.86) | (7.86) | (7.86) | (7.86) | (7.86) | (7.86) |
| **TOTAL FOR UNSECURED** | | (284.28) | (284.28) | (284.28) | (284.28) | (284.28) | (284.28) | (284.28) | (284.28) | (284.28) | (284.28) | (284.28) | (284.28) |
| | **Priority Claims** | | | | | | | | | | | | |
| | None | | | | | | | | | | | | |
| | **TOTAL DISBURSEMENTS** | (17,223.40) | (17,223.40) | (17,223.40) | (17,223.40) | (17,223.40) | (17,223.40) | (17,223.40) | (17,223.40) | (17,223.40) | (17,223.40) | (17,223.40) | (17,223.40) |
| **BEGINNING BALANCE** | | 77,821.22 | 80,585.21 | 83,349.20 | 86,113.19 | 89,457.12 | 92,801.06 | 96,144.99 | 99,488.92 | 102,832.85 | 106,176.78 | 109,520.72 | 112,864.65 |
| **RECEIPTS** | | 19,987.39 | 19,987.39 | 19,987.39 | 20,567.33 | 20,567.33 | 20,567.33 | 20,567.33 | 20,567.33 | 20,567.33 | 20,567.33 | 20,567.33 | 20,567.33 |
| **TOTAL CASH DISBURSEMENTS** | | (17,223.40) | (17,223.40) | (17,223.40) | (17,223.40) | (17,223.40) | (17,223.40) | (17,223.40) | (17,223.40) | (17,223.40) | (17,223.40) | (17,223.40) | (17,223.40) |
| **NET CASH FLOW** | | 2,763.99 | 2,763.99 | 2,763.99 | 3,343.93 | 3,343.93 | 3,343.93 | 3,343.93 | 3,343.93 | 3,343.93 | 3,343.93 | 3,343.93 | 3,343.93 |
| **ENDING BALANCE** | | 80,585.21 | 83,349.20 | 86,113.19 | 89,457.12 | 92,801.06 | 96,144.99 | 99,488.92 | 102,832.85 | 106,176.78 | 109,520.72 | 112,864.65 | 116,208.58 |

EXHIBIT B

**Proposed Plan Budget - 60 months**
**CHAPTER 11 INDIVIDUAL DEBTOR**

BILL AND AMY DEMPSEY
Case No 19-01069-JMM

**Plan Year 3**

| | | Oct-22 | Nov-22 | Dec-22 | Jan-23 | Feb-23 | Mar-23 | Apr-23 | May-23 | Jun-23 | Jul-23 | Aug-23 | Sep-23 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Beginning Cash Balance | | $ 116,208.58 | $ 119,552.51 | $ 122,896.44 | $ 126,240.38 | 149.59 | 4,146.54 | 4,143.49 | 4,140.44 | 4,137.39 | 4,134.35 | 4,131.30 | 2,128.25 |
| **CASH RECEIPTS** | | | | | | | | | | | | | |
| | Net Wages | $ 19,911.33 | $ 19,911.33 | $ 19,911.33 | 20,508.67 | 20,508.67 | 20,508.67 | 20,508.67 | 20,508.67 | 20,508.67 | 20,508.67 | 20,508.67 | 20,508.67 |
| | Average expense reimbursements | $ 656.00 | $ 656.00 | $ 656.00 | 656.00 | 656.00 | 656.00 | 656.00 | 656.00 | 656.00 | 656.00 | 656.00 | 656.00 |
| TOTAL CASH RECEIPTS | | $ 136,775.91 | $ 140,119.84 | $ 143,463.78 | 147,405.05 | 21,314.26 | 25,311.21 | 25,308.16 | 25,305.11 | 25,302.07 | 25,299.02 | 25,295.97 | 23,292.92 |
| **CASH DISBURSEMENTS** | | | | | | | | | | | | | |
| | ICCU regular monthly mortgage payments | $ (3,308.74) | (3,308.74) | (3,308.74) | (3,308.74) | (3,308.74) | (3,308.74) | (3,308.74) | (3,308.74) | (3,308.74) | (3,308.74) | (3,308.74) | (3,308.74) |
| | Washington Trust Bank regular monthly LOC payments | $ (1,407.09) | (1,407.09) | (1,407.09) | (1,407.09) | | | | | | | | |
| | Reserve to make lump sum payment under Washington Trust Bank Note - maturity date 1/12/2023 Balloon Payment | $ (4,816.00) | (4,816.00) | (4,816.00) | (130,032.06) | | | | | | | | |
| | Held in savings for WaTrust Balloon Payment | $ 4,816.00 | 4,816.00 | 4,816.00 | | | | | | | | | |
| | Personal Living Expenses | $ (9,334.00) | (9,334.00) | (9,334.00) | (9,334.00) | (9,334.00) | (9,334.00) | (9,334.00) | (9,334.00) | (9,334.00) | (9,334.00) | (11,334.00) | (13,334.00) |
| | Insurance | $ (585.33) | (585.33) | (585.33) | (585.33) | (585.33) | (585.33) | (585.33) | (585.33) | (585.33) | (585.33) | (585.33) | (585.33) |
| | Meals and Travel for business | $ (656.00) | (656.00) | (656.00) | (656.00) | (656.00) | (656.00) | (656.00) | (656.00) | (656.00) | (656.00) | (656.00) | (656.00) |
| **TOTAL EXPENSES** | | $ (15,291.16) | (15,291.16) | (15,291.16) | (145,323.22) | (13,884.07) | (13,884.07) | (13,884.07) | (13,884.07) | (13,884.07) | (13,884.07) | (15,884.07) | (17,884.07) |
| **SECURED PLAN PAYMENTS** | | | | | | | | | | | | | |
| Class 3, Claim No. 11 Vehicle | Bank of America | $ (189.51) | (189.51) | (189.51) | (189.51) | (189.51) | (189.51) | (189.51) | (189.51) | (189.51) | (189.51) | (189.51) | (189.51) |
| Class 4, Claim No. 9 Mortgage | Idaho Central Credit Union | $ (661.75) | (661.75) | (661.75) | (661.75) | (661.75) | (661.75) | (661.75) | (661.75) | (661.75) | (661.75) | (661.75) | (661.75) |
| Class 5, Claim No. 10 Vehicle | Idaho Central Credit Union, secured portion | $ (193.66) | (193.66) | (193.66) | (193.66) | (193.66) | (193.66) | (193.66) | (193.66) | (193.66) | (193.66) | (193.66) | (193.66) |
| Class 6, Secured Line of Credit | Washington Trust Bank | $ (603.04) | (603.04) | (603.04) | (603.04) | | | | | | | | |
| Class 7, Claim Nos. 4,5,6,7,8 | Ada County Treasurer | | | | | | | | | | | | |
| **TOTAL FOR SECURED** | | $ (1,647.96) | (1,647.96) | (1,647.96) | (1,647.96) | (1,044.92) | (1,044.92) | (1,044.92) | (1,044.92) | (1,044.92) | (1,044.92) | (1,044.92) | (1,044.92) |
| **Estimated Professional fees, subject to Court approval** | | | | | | | | | | | | | |
| Class 1, Class  AC1 | Attorney - Holly Roark | $ - | - | - | - | | | (2,000.00) | (2,000.00) | (2,000.00) | (2,000.00) | (2,000.00) | (3,000.00) | - |
| Class 1, Class AC2 | Attorney - Mike Band | $ - | - | - | - | | | (2,000.00) | (2,000.00) | (2,000.00) | (2,000.00) | (2,000.00) | (1,000.00) | - |
| Class 1, Class AC3 | Attorney - Petersen Moss Hall & Olsen | $ - | - | - | - | - | - | - | - | - | - | - | - |
| Class 1, Class AC4 | Appraiser - Jody Graham | $ - | - | - | - | - | - | - | - | - | - | - | - |
| Class 1, Class AC5 | UST Quarterly fees | $ - | | | | | | | | | | | |
| **TOTAL ADMINISTRATIVE** | | $ - | - | - | - | - | - | (4,000.00) | (4,000.00) | (4,000.00) | (4,000.00) | (4,000.00) | (4,000.00) | - |
| **UNSECURED PLAN PAYMENTS** | **Unsecured debt payments** | | | | | | | | | | | | | |
| Class 10, *subject to preference offset | Barclays Bank | $ (8.98) | (8.98) | (8.98) | (8.98) | (70.75) | (70.75) | (70.75) | (70.75) | (70.75) | (70.75) | (70.75) | (70.75) |
| Class 9, Claim No. 2 - *disputed, subject to liquidation; payment pending liquidation of claim | BrunoBuilt, Inc. | $ (238.00) | (238.00) | (238.00) | (238.00) | (1,874.32) | (1,874.32) | (1,874.32) | (1,874.32) | (1,874.32) | (1,874.32) | (1,874.32) | (1,874.32) |
| Claim No. 3 *subject to preference offset | Capital One | $ (2.73) | (2.73) | (2.73) | (2.73) | (21.54) | (21.54) | (21.54) | (21.54) | (21.54) | (21.54) | (21.54) | (21.54) |
| Class 10 | Chase Card Member Services | $ (2.62) | (2.62) | (2.62) | (2.62) | (20.60) | (20.60) | (20.60) | (20.60) | (20.60) | (20.60) | (20.60) | (20.60) |
| Class 10 | Davison, Copple, Copple & Copple, LLP | $ (3.23) | (3.23) | (3.23) | (3.23) | (25.45) | (25.45) | (25.45) | (25.45) | (25.45) | (25.45) | (25.45) | (25.45) |
| Class 10, Claim No. 1 | Morrow & Fischer | $ (0.32) | (0.32) | (0.32) | (0.32) | (2.49) | (2.49) | (2.49) | (2.49) | (2.49) | (2.49) | (2.49) | (2.49) |
| Class 8, *subject to preference offset | Washington Trust Bank | $ (16.79) | (16.79) | (16.79) | (16.79) | (132.24) | (132.24) | (132.24) | (132.24) | (132.24) | (132.24) | (132.24) | (132.24) |
| Class 10, Claim No. 12 | Zion's Bank | $ (3.46) | (3.46) | (3.46) | (3.46) | (27.21) | (27.21) | (27.21) | (27.21) | (27.21) | (27.21) | (27.21) | (27.21) |
| Class 10, Claim No. 10 Vehicle | ICCU, unsecured portion of car claim | $ (0.29) | (0.29) | (0.29) | (0.29) | (2.26) | (2.26) | (2.26) | (2.26) | (2.26) | (2.26) | (2.26) | (2.26) |
| Class 10, *subject to preference offset | William & Bernadette Dempsey | $ (7.86) | (7.86) | (7.86) | (7.86) | (61.87) | (61.87) | (61.87) | (61.87) | (61.87) | (61.87) | (61.87) | (61.87) |
| **TOTAL FOR UNSECURED** | | $ (284.28) | (284.28) | (284.28) | (284.28) | (2,238.73) | (2,238.73) | (2,238.73) | (2,238.73) | (2,238.73) | (2,238.73) | (2,238.73) | (2,238.73) |
| | **Priority Claims** | | | | | | | | | | | | | |
| | None | | | | | | | | | | | | | |
| | **TOTAL DISBURSEMENTS** | $ (17,223.40) | (17,223.40) | (17,223.40) | (147,255.46) | (17,167.72) | (17,167.72) | (21,167.72) | (21,167.72) | (21,167.72) | (21,167.72) | (23,167.72) | (21,167.72) |
| BEGINNING BALANCE | | $ 116,208.58 | 119,552.51 | 122,896.44 | 126,240.38 | 149.59 | 4,146.54 | 4,143.49 | 4,140.44 | 4,137.39 | 4,134.35 | 4,131.30 | 2,128.25 |
| RECEIPTS | | 20,567.33 | 20,567.33 | 20,567.33 | 21,164.67 | 21,164.67 | 21,164.67 | 21,164.67 | 21,164.67 | 21,164.67 | 21,164.67 | 21,164.67 | 21,164.67 |
| TOTAL CASH DISBURSEMENTS | | (17,223.40) | (17,223.40) | (17,223.40) | (147,255.46) | (17,167.72) | (21,167.72) | (21,167.72) | (21,167.72) | (21,167.72) | (21,167.72) | (23,167.72) | (21,167.72) |
| NET CASH FLOW | | 3,343.93 | 3,343.93 | 3,343.93 | (126,090.79) | 3,996.95 | (3.05) | (3.05) | (3.05) | (3.05) | (3.05) | (2,003.05) | (3.05) |
| ENDING BALANCE | | $ 119,552.51 | 122,896.44 | 126,240.38 | 149.59 | 4,146.54 | 4,143.49 | 4,140.44 | 4,137.39 | 4,134.35 | 4,131.30 | 2,128.25 | 2,125.20 |

EXHIBIT B

**Proposed Plan Budget - 60 months**
**CHAPTER 11 INDIVIDUAL DEBTOR**

BILL AND AMY DEMPSEY
Case No 19-01069-JMM

Plan Year 4

| | | Oct-23 | Nov-23 | Dec-23 | Jan-24 | Feb-24 | Mar-24 | Apr-24 | May-24 | Jun-24 | Jul-24 | Aug-24 | Sep-24 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Beginning Cash Balance | | 2,125.20 | 2,122.15 | 2,119.11 | 2,116.06 | 2,728.27 | 3,340.48 | 3,452.69 | 3,564.91 | 3,677.12 | 3,789.33 | 3,901.54 | 4,013.75 |
| CASH RECEIPTS | | | | | | | | | | | | | |
| | Net Wages | 20,508.67 | 20,508.67 | 20,508.67 | 21,123.93 | 21,123.93 | 21,123.93 | 21,123.93 | 21,123.93 | 21,123.93 | 21,123.93 | 21,123.93 | 21,123.93 |
| | Average expense reimbursements | 656.00 | 656.00 | 656.00 | 656.00 | 656.00 | 656.00 | 656.00 | 656.00 | 656.00 | 656.00 | 656.00 | 656.00 |
| TOTAL CASH RECEIPTS | | 23,289.87 | 23,286.83 | 23,283.78 | 23,895.99 | 24,508.20 | 25,120.41 | 25,232.63 | 25,344.84 | 25,457.05 | 25,569.26 | 25,681.47 | 25,793.69 |
| CASH DISBURSEMENTS | | | | | | | | | | | | | |
| | ICCU regular monthly mortgage payments | (3,308.74) | (3,308.74) | (3,308.74) | (3,308.74) | (3,308.74) | (3,308.74) | (3,308.74) | (3,308.74) | (3,308.74) | (3,308.74) | (3,308.74) | (3,308.74) |
| | Washington Trust Bank regular monthly LOC payments | | | | | | | | | | | | |
| | Reserve to make lump sum payment under Washington Trust Bank Note - maturity date 1/12/2023 Balloon Payment | | | | | | | | | | | | |
| | Held in savings for WaTrust Balloon Payment | | | | | | | | | | | | |
| | Personal Living Expenses | (13,334.00) | (13,334.00) | (13,334.00) | (13,334.00) | (13,334.00) | (13,834.00) | (13,834.00) | (13,834.00) | (13,834.00) | (13,834.00) | (13,834.00) | (14,334.00) |
| | Insurance | (585.33) | (585.33) | (585.33) | (585.33) | (585.33) | (585.33) | (585.33) | (585.33) | (585.33) | (585.33) | (585.33) | (585.33) |
| | Meals and Travel for business | (656.00) | (656.00) | (656.00) | (656.00) | (656.00) | (656.00) | (656.00) | (656.00) | (656.00) | (656.00) | (656.00) | (656.00) |
| TOTAL EXPENSES | | (17,884.07) | (17,884.07) | (17,884.07) | (17,884.07) | (17,884.07) | (18,384.07) | (18,384.07) | (18,384.07) | (18,384.07) | (18,384.07) | (18,384.07) | (18,884.07) |
| SECURED PLAN PAYMENTS | | | | | | | | | | | | | |
| Class 3, Claim No. 11 Vehicle | Bank of America | (189.51) | (189.51) | (189.51) | (189.51) | (189.51) | (189.51) | (189.51) | (189.51) | (189.51) | (189.51) | (189.51) | (189.51) |
| Class 4, Claim No. 9 Mortgage | Idaho Central Credit Union | (661.75) | (661.75) | (661.75) | (661.75) | (661.75) | (661.75) | (661.75) | (661.75) | (661.75) | (661.75) | (661.75) | (661.75) |
| Class 5 , Claim No. 10 Vehicle | Idaho Central Credit Union, secured portion | (193.66) | (193.66) | (193.66) | (193.66) | (193.66) | (193.66) | (193.66) | (193.66) | (193.66) | (193.66) | (193.66) | (193.66) |
| Class 6, Secured Line of Credit | Washington Trust Bank | | | | | | | | | | | | |
| Class 7, Claim Nos. 4,5,6,7,8 | Ada County Treasurer | | | | | | | | | | | | |
| TOTAL FOR SECURED | | (1,044.92) | (1,044.92) | (1,044.92) | (1,044.92) | (1,044.92) | (1,044.92) | (1,044.92) | (1,044.92) | (1,044.92) | (1,044.92) | (1,044.92) | (1,044.92) |
| Estimated Professional fees, subject to Court approval | | | | | | | | | | | | | |
| Class 1, Class AC1 | Attorney - Holly Roark | - | - | - | - | - | - | - | - | - | - | - | - |
| Class 1, Class AC2 | Attorney - Mike Band | - | - | - | - | - | - | - | - | - | - | - | - |
| Class 1, Class AC3 | Attorney - Petersen Moss Hall & Olsen | - | - | - | - | - | - | - | - | - | - | - | - |
| Class 1, Class AC4 | Appraiser - Jody Graham | - | - | - | - | - | - | - | - | - | - | - | - |
| Class 1, Class AC5 | UST Quarterly fees | - | - | - | - | - | - | - | - | - | - | - | - |
| TOTAL ADMINISTRATIVE | | - | - | - | - | - | - | - | - | - | - | - | - |
| UNSECURED PLAN PAYMENTS | Unsecured debt payments | | | | | | | | | | | | |
| Class 10, *subject to preference offset | Barclays Bank | (70.75) | (70.75) | (70.75) | (70.75) | (70.75) | (70.75) | (70.75) | (70.75) | (70.75) | (70.75) | (70.75) | (70.75) |
| Class 9, Claim No. 2 - *disputed, subject to liquidation; payment pending liquidation of claim | BrunoBuilt, Inc. | (1,874.32) | (1,874.32) | (1,874.32) | (1,874.32) | (1,874.32) | (1,874.32) | (1,874.32) | (1,874.32) | (1,874.32) | (1,874.32) | (1,874.32) | (1,874.32) |
| Claim No. 3 *subject to preference offset | Capital One | (21.54) | (21.54) | (21.54) | (21.54) | (21.54) | (21.54) | (21.54) | (21.54) | (21.54) | (21.54) | (21.54) | (21.54) |
| Class 10 | Chase Card Member Services | (20.60) | (20.60) | (20.60) | (20.60) | (20.60) | (20.60) | (20.60) | (20.60) | (20.60) | (20.60) | (20.60) | (20.60) |
| Class 10 | Davison, Copple, Copple & Copple, LLP | (25.45) | (25.45) | (25.45) | (25.45) | (25.45) | (25.45) | (25.45) | (25.45) | (25.45) | (25.45) | (25.45) | (25.45) |
| Class 10, Claim No. 1 | Morrow & Fischer | (2.49) | (2.49) | (2.49) | (2.49) | (2.49) | (2.49) | (2.49) | (2.49) | (2.49) | (2.49) | (2.49) | (2.49) |
| Class 8, *subject to preference offset | Washington Trust Bank | (132.24) | (132.24) | (132.24) | (132.24) | (132.24) | (132.24) | (132.24) | (132.24) | (132.24) | (132.24) | (132.24) | (132.24) |
| Class 10, Claim No. 12 | Zion's Bank | (27.21) | (27.21) | (27.21) | (27.21) | (27.21) | (27.21) | (27.21) | (27.21) | (27.21) | (27.21) | (27.21) | (27.21) |
| Class 10, Claim No. 10 Vehicle | ICCU, unsecured portion of car claim | (2.26) | (2.26) | (2.26) | (2.26) | (2.26) | (2.26) | (2.26) | (2.26) | (2.26) | (2.26) | (2.26) | (2.26) |
| Class 10, *subject to preference offset | William & Bernadette Dempsey | (61.87) | (61.87) | (61.87) | (61.87) | (61.87) | (61.87) | (61.87) | (61.87) | (61.87) | (61.87) | (61.87) | (61.87) |
| TOTAL FOR UNSECURED | | (2,238.73) | (2,238.73) | (2,238.73) | (2,238.73) | (2,238.73) | (2,238.73) | (2,238.73) | (2,238.73) | (2,238.73) | (2,238.73) | (2,238.73) | (2,238.73) |
| | Priority Claims | | | | | | | | | | | | |
| | None | | | | | | | | | | | | |
| | TOTAL DISBURSEMENTS | (21,167.72) | (21,167.72) | (21,167.72) | (21,167.72) | (21,167.72) | (21,667.72) | (21,667.72) | (21,667.72) | (21,667.72) | (21,667.72) | (21,667.72) | (22,167.72) |
| BEGINNING BALANCE | | 2,125.20 | 2,122.15 | 2,119.11 | 2,116.06 | 2,728.27 | 3,340.48 | 3,452.69 | 3,564.91 | 3,677.12 | 3,789.33 | 3,901.54 | 4,013.75 |
| RECEIPTS | | 21,164.67 | 21,164.67 | 21,164.67 | 21,779.93 | 21,779.93 | 21,779.93 | 21,779.93 | 21,779.93 | 21,779.93 | 21,779.93 | 21,779.93 | 21,779.93 |
| TOTAL CASH DISBURSEMENTS | | (21,167.72) | (21,167.72) | (21,167.72) | (21,167.72) | (21,167.72) | (21,667.72) | (21,667.72) | (21,667.72) | (21,667.72) | (21,667.72) | (21,667.72) | (22,167.72) |
| NET CASH FLOW | | (3.05) | (3.05) | (3.05) | 612.21 | 612.21 | 112.21 | 112.21 | 112.21 | 112.21 | 112.21 | 112.21 | (387.79) |
| ENDING BALANCE | | 2,122.15 | 2,119.11 | 2,116.06 | 2,728.27 | 3,340.48 | 3,452.69 | 3,564.91 | 3,677.12 | 3,789.33 | 3,901.54 | 4,013.75 | 3,625.97 |

EXHIBIT B

**Proposed Plan Budget - 60 months**
**CHAPTER 11 INDIVIDUAL DEBTOR**

BILL AND AMY DEMPSEY
Case No 19-01069-JMM

| | | Plan Year 5 | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Oct-24 | Nov-24 | Dec-24 | Jan-25 | Feb-25 | Mar-25 | Apr-25 | May-25 | Jun-25 | Jul-25 | Aug-25 | Sep-25 |
| Beginning Cash Balance | | 3,625.97 | 3,238.18 | 2,850.39 | 2,462.60 | 2,708.53 | 2,954.46 | 3,200.39 | 3,446.32 | 3,692.25 | 3,938.18 | 4,184.11 | 4,430.04 |
| **CASH RECEIPTS** | | | | | | | | | | | | | |
| | Net Wages | 21,123.93 | 21,123.93 | 21,123.93 | 21,757.65 | 21,757.65 | 21,757.65 | 21,757.65 | 21,757.65 | 21,757.65 | 21,757.65 | 21,757.65 | 21,757.65 |
| | Average expense reimbursements | 656.00 | 656.00 | 656.00 | 656.00 | 656.00 | 656.00 | 656.00 | 656.00 | 656.00 | 656.00 | 656.00 | 656.00 |
| TOTAL CASH RECEIPTS | | 25,405.90 | 25,018.11 | 24,630.32 | 24,876.25 | 25,122.18 | 25,368.11 | 25,614.04 | 25,859.97 | 26,105.90 | 26,351.83 | 26,597.76 | 26,843.69 |
| **CASH DISBURSEMENTS** | | | | | | | | | | | | | |
| | ICCU regular monthly mortgage payments | (3,308.74) | (3,308.74) | (3,308.74) | (3,308.74) | (3,308.74) | (3,308.74) | (3,308.74) | (3,308.74) | (3,308.74) | (3,308.74) | (3,308.74) | (3,308.74) |
| | Washington Trust Bank regular monthly LOC payments | | | | | | | | | | | | |
| | Reserve to make lump sum payment under Washington Trust Bank Note - maturity date 1/12/2023 Balloon Payment | | | | | | | | | | | | |
| | Held in savings for WaTrust Balloon Payment | | | | | | | | | | | | |
| | Personal Living Expenses | (14,334.00) | (14,334.00) | (14,334.00) | (14,334.00) | (14,334.00) | (14,334.00) | (14,334.00) | (14,334.00) | (14,334.00) | (14,334.00) | (14,334.00) | (14,334.00) |
| | Insurance | (585.33) | (585.33) | (585.33) | (585.33) | (585.33) | (585.33) | (585.33) | (585.33) | (585.33) | (585.33) | (585.33) | (585.33) |
| | Meals and Travel for business | (656.00) | (656.00) | (656.00) | (656.00) | (656.00) | (656.00) | (656.00) | (656.00) | (656.00) | (656.00) | (656.00) | (656.00) |
| **TOTAL EXPENSES** | | (18,884.07) | (18,884.07) | (18,884.07) | (18,884.07) | (18,884.07) | (18,884.07) | (18,884.07) | (18,884.07) | (18,884.07) | (18,884.07) | (18,884.07) | (18,884.07) |
| **SECURED PLAN PAYMENTS** | | | | | | | | | | | | | |
| Class 3, Claim No. 11 Vehicle | Bank of America | (189.51) | (189.51) | (189.51) | (189.51) | (189.51) | (189.51) | (189.51) | (189.51) | (189.51) | (189.51) | (189.51) | (189.51) |
| Class 4, Claim No. 9 Mortgage | Idaho Central Credit Union | (661.75) | (661.75) | (661.75) | (661.75) | (661.75) | (661.75) | (661.75) | (661.75) | (661.75) | (661.75) | (661.75) | (661.75) |
| Class 5 , Claim No. 10 Vehicle | Idaho Central Credit Union, secured portion | (193.66) | (193.66) | (193.66) | (193.66) | (193.66) | (193.66) | (193.66) | (193.66) | (193.66) | (193.66) | (193.66) | (193.66) |
| Class 6, Secured Line of Credit | Washington Trust Bank | | | | | | | | | | | | |
| Class 7, Claim Nos. 4,5,6,7,8 | Ada County Treasurer | | | | | | | | | | | | |
| **TOTAL FOR SECURED** | | (1,044.92) | (1,044.92) | (1,044.92) | (1,044.92) | (1,044.92) | (1,044.92) | (1,044.92) | (1,044.92) | (1,044.92) | (1,044.92) | (1,044.92) | (1,044.92) |
| **Estimated Professional fees, subject to Court approval** | | | | | | | | | | | | | |
| Class 1, Class AC1 | Attorney - Holly Roark | - | - | - | - | - | - | - | - | - | - | - | - |
| Class 1, Class AC2 | Attorney - Mike Band | - | - | - | - | - | - | - | - | - | - | - | - |
| Class 1, Class AC3 | Attorney - Petersen Moss Hall & Olsen | - | - | - | - | - | - | - | - | - | - | - | - |
| Class 1, Class AC4 | Appraiser - Jody Graham | - | - | - | - | - | - | - | - | - | - | - | - |
| Class 1, Class AC5 | UST Quarterly fees | - | | | | | | | | | | | |
| **TOTAL ADMINISTRATIVE** | | - | - | - | - | - | - | - | - | - | - | - | - |
| **UNSECURED PLAN PAYMENTS** | **Unsecured debt payments** | | | | | | | | | | | | |
| Class 10, *subject to preference offset | Barclays Bank | (70.75) | (70.75) | (70.75) | (70.75) | (70.75) | (70.75) | (70.75) | (70.75) | (70.75) | (70.75) | (70.75) | (70.75) |
| Class 9, Claim No. 2 - *disputed, subject to liquidation; payment pending liquidation of claim | BrunoBuilt, Inc. | (1,874.32) | (1,874.32) | (1,874.32) | (1,874.32) | (1,874.32) | (1,874.32) | (1,874.32) | (1,874.32) | (1,874.32) | (1,874.32) | (1,874.32) | (1,874.32) |
| Claim No. 3 *subject to preference offset | Capital One | (21.54) | (21.54) | (21.54) | (21.54) | (21.54) | (21.54) | (21.54) | (21.54) | (21.54) | (21.54) | (21.54) | (21.54) |
| Class 10 | Chase Card Member Services | (20.60) | (20.60) | (20.60) | (20.60) | (20.60) | (20.60) | (20.60) | (20.60) | (20.60) | (20.60) | (20.60) | (20.60) |
| Class 10 | Davison, Copple, Copple & Copple, LLP | (25.45) | (25.45) | (25.45) | (25.45) | (25.45) | (25.45) | (25.45) | (25.45) | (25.45) | (25.45) | (25.45) | (25.45) |
| Class 10, Claim No. 1 | Morrow & Fischer | (2.49) | (2.49) | (2.49) | (2.49) | (2.49) | (2.49) | (2.49) | (2.49) | (2.49) | (2.49) | (2.49) | (2.49) |
| Class 8, *subject to preference offset | Washington Trust Bank | (132.24) | (132.24) | (132.24) | (132.24) | (132.24) | (132.24) | (132.24) | (132.24) | (132.24) | (132.24) | (132.24) | (132.24) |
| Class 10, Claim No. 12 | Zion's Bank | (27.21) | (27.21) | (27.21) | (27.21) | (27.21) | (27.21) | (27.21) | (27.21) | (27.21) | (27.21) | (27.21) | (27.21) |
| Class 10, Claim No. 10 Vehicle | ICCU, unsecured portion of car claim | (2.26) | (2.26) | (2.26) | (2.26) | (2.26) | (2.26) | (2.26) | (2.26) | (2.26) | (2.26) | (2.26) | (2.26) |
| Class 10, *subject to preference offset | William & Bernadette Dempsey | (61.87) | (61.87) | (61.87) | (61.87) | (61.87) | (61.87) | (61.87) | (61.87) | (61.87) | (61.87) | (61.87) | (61.87) |
| **TOTAL FOR UNSECURED** | | (2,238.73) | (2,238.73) | (2,238.73) | (2,238.73) | (2,238.73) | (2,238.73) | (2,238.73) | (2,238.73) | (2,238.73) | (2,238.73) | (2,238.73) | (2,238.73) |
| | **Priority Claims** | | | | | | | | | | | | |
| | None | | | | | | | | | | | | |
| | **TOTAL DISBURSEMENTS** | (22,167.72) | (22,167.72) | (22,167.72) | (22,167.72) | (22,167.72) | (22,167.72) | (22,167.72) | (22,167.72) | (22,167.72) | (22,167.72) | (22,167.72) | (22,167.72) |
| BEGINNING BALANCE | | 3,625.97 | 3,238.18 | 2,850.39 | 2,462.60 | 2,708.53 | 2,954.46 | 3,200.39 | 3,446.32 | 3,692.25 | 3,938.18 | 4,184.11 | 4,430.04 |
| RECEIPTS | | 21,779.93 | 21,779.93 | 21,779.93 | 22,413.65 | 22,413.65 | 22,413.65 | 22,413.65 | 22,413.65 | 22,413.65 | 22,413.65 | 22,413.65 | 22,413.65 |
| TOTAL CASH DISBURSEMENTS | | (22,167.72) | (22,167.72) | (22,167.72) | (22,167.72) | (22,167.72) | (22,167.72) | (22,167.72) | (22,167.72) | (22,167.72) | (22,167.72) | (22,167.72) | (22,167.72) |
| NET CASH FLOW | | (387.79) | (387.79) | (387.79) | 245.93 | 245.93 | 245.93 | 245.93 | 245.93 | 245.93 | 245.93 | 245.93 | 245.93 |
| ENDING BALANCE | | 3,238.18 | 2,850.39 | 2,462.60 | 2,708.53 | 2,954.46 | 3,200.39 | 3,446.32 | 3,692.25 | 3,938.18 | 4,184.11 | 4,430.04 | 4,675.97 |

PAGE 35

EXHIBIT B

**DISTRIBUTION TO GENERAL UNSECURED CREDITORS**
**CHAPTER 11 INDIVIDUAL DEBTOR**

BILL AND AMY DEMPSEY
Case No 19-01069-JMM

| | | % | Est. Total Distribution | | Per Month, Months 1-28 | x28 | Total Months 1-28 | Per Month, Months 29-60 | x32 | Total Months 32-60 | Total Distribution |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Class 10, Barclays Bank *subject to preference offset | $ 50,308.35 | 5% | $ 2,515.42 | EST. | $ 8.98 | 28 | $ 251.44 | $ 70.75 | 32 | $ 2,264.00 | $ 2,515.44 |
| Class 9, BrunoBuilt, Inc. *disputed, subject to liquidation | $ 1,332,845.12 | 5% | $ 66,642.26 | EST. | $ 238.00 | 28 | $ 6,664.00 | $ 1,874.32 | 32 | $ 59,978.24 | $ 66,642.24 |
| Class 10, Capital One *subject to preference offset | $ 15,313.84 | 5% | $ 765.69 | EST. | $ 2.73 | 28 | $ 76.44 | $ 21.54 | 32 | $ 689.28 | $ 765.72 |
| Class 10, Chase Card Member Services | $ 14,650.00 | 5% | $ 732.50 | | $ 2.62 | 28 | $ 73.36 | $ 20.60 | 32 | $ 659.20 | $ 732.56 |
| Class 10, Davison, Copple, Copple | $ 18,098.04 | 5% | $ 904.90 | | $ 3.23 | 28 | $ 90.44 | $ 25.45 | 32 | $ 814.40 | $ 904.84 |
| Class 10, Morrow & Fischer | $ 1,775.00 | 5% | $ 88.75 | | $ 0.32 | 28 | $ 8.96 | $ 2.49 | 32 | $ 79.68 | $ 88.64 |
| Class 8, Washington Trust Bank *subject to preference offset | $ 94,035.96 | 5% | $ 4,701.80 | EST. | $ 16.79 | 28 | $ 470.12 | $ 132.24 | 32 | $ 4,231.68 | $ 4,701.80 |
| Class 10, Zion's Bank | $ 19,350.60 | 5% | $ 967.53 | | $ 3.46 | 28 | $ 96.88 | $ 27.21 | 32 | $ 870.72 | $ 967.60 |
| Class 10, ICCU unsecured portion of car claim | $ 1,607.00 | 5% | $ 80.35 | | $ 0.29 | 28 | $ 8.12 | $ 2.26 | 32 | $ 72.32 | $ 80.44 |
| Class 10, William & Bernadette Dempsey *subject to preference offset | $ 44,000.00 | 5% | $ 2,200.00 | EST. | $ 7.86 | 28 | $ 220.08 | $ 61.87 | 32 | $ 1,979.84 | $ 2,199.92 |
| **Total** | $ 1,591,983.91 | 5% | $ 79,599.20 | | $ 284.28 | | $ 7,959.84 | $ 2,238.73 | | $ 71,639.36 | $ 79,599.20 |

PAGE 36

EXHIBIT B

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that ON August 3, 2020, I filed the forgoing document electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

- Holly Roark on behalf of Debtors-in-Possession <u>holly@roarklawboise.com</u>, <u>courtnotices@roarklawoffices.com</u>
- Robert A Faucher on behalf of Creditor BrunoBuilt, Inc.
rfaucher@hollandhart.com, boiseintaketeam@hollandhart.com;spturner@hollandhart.com
- Philip John Griffin on behalf of Creditor BrunoBuilt, Inc.
PJGriffin@hollandhart.com, boiseintaketeam@hollandhart.com;njhammond@hollandhart.com
- Jesse A.P. Baker on behalf of Creditor Bank of America (NC) ecfidb@aldridgepite.com, JPB@ecf.courtdrive.com
- Lesley Bohleber on behalf of Creditor Bank of America, N.A. ecfidb@aldridgepite.com, llueke@ecf.courtdrive.com
- Trevor L Hart on behalf of Creditor Washington Trust Bank
tlh@perrylawpc.com, jks@perrylawpc.com;mbp@perrylawpc.com;taw@perrylawpc.com
- Scott B Muir on behalf of Interested Party CITY OF BOISE
BoiseCityAttorney@cityofboise.org
- Brett R Cahoon on behalf of U.S. Trustee ustp.region18.bs.ecf@usdoj.gov

AND I FURTHER CERTIFY that on such date I served the foregoing on the following non CM/ECF Registered Participants in the manner indicated:

Via first class mail, postage prepaid addressed as follows:

N/A

<u>/s/Holly Roark</u>

Holly Roark